Submitted May 28, 2014, affirmed February 25, petition for review allowed July 9, 2015 (357 Or 551)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## BRIAN JAMES CHANDLER,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1101757; A152098

344 P3d 543

Peter Gartlan, Chief Defender, and Eric Johansen, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael R. Salvas, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

Defendant was convicted of two counts of first-degree sexual abuse, ORS 163.427, and sentenced to a total of 112 months in prison. The victims were two girls ages 12 and 7. On appeal, defendant seeks reversal of the convictions. In his first, second, and third assignments of error, defendant challenges the trial court's admission into evidence of a videotaped interrogation of defendant by Detective Gates.[1] The videotape, which was played for the jury, includes statements by Gates expressing her views that defendant was lying and that the victims were telling the truth. Defendant argues that those statements were prejudicial comments on the credibility of defendant and the victims and should have been excluded under OEC 403. The state responds that defendant's OEC 403 argument was unpreserved and that the trial court's admission of the evidence was not plain error. We agree with the state, and we affirm the judgment.

The conduct at issue occurred at the home of D, the 12-year-old victim. She lived there with her mother, father, and two brothers. A, the seven-year-old victim, is related to the family and stayed at the home one night. Defendant was a close friend of the family and also stayed that night. Both D and A later reported to family members that defendant had touched them. D said that she awoke to find defendant rubbing her thigh near her genital area. A said that defendant had touched her under her clothes. She later told a CARES interviewer that defendant had touched her on her "pee" with his hand.

Gates received a report of suspected abuse from the Department of Human Services and attended A's CARES interview. Gates later interviewed defendant; at the end of that approximately two-hour interview, she arrested defendant. That videotaped interview is the subject of this appeal. In the interview, defendant repeatedly denied the allegations. Gates made numerous comments indicating

---

[1] In a fourth assignment of error, defendant argues that the trial court erred when it denied defendant's request to instruct the jury that a unanimous vote was required for a conviction. We have rejected that argument on previous occasions and do so here without further discussion. *State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007).

that she believed the victims and that defendant was not being truthful. The following examples are illustrative:

"[GATES:] [B]ut if I have someone saying a completely different story than everyone else—I have a little kid saying you did something, and she's crying and scared, doesn't want to go back to grandma and grandpa's, has no reason to lie about this, has no reason to pin it on you. She doesn't know you.

"* * * I have a little girl that's saying what she's saying, and I've got a video of it, and it's extremely telling [because] it's heartbreaking. The girl had no history of, you know, lying, making accusations against people that have turned out to be lies.

"We have [D] that you sat here yourself and said she's a nice kid.

"* * * * *

"[GATES:] So here's how I work. When I talk to people, usually the suspect is the very last person I talk to, [because] I want to know as much about you as I can. I want to know much—as much about that incident, what people saw and what people heard, you know, what you talked to people about since that happened. I want to know everything. I want to know about your past. I want to know what you're doing now. And I want to talk to you, and talk to you like I don't know any of it, and see if you're going to lie to me about stuff you don't even have to lie about. And that's exactly what you've done. And so some of [the] stuff, I know you've been honest about. And I can see you act a certain way when you say something that's truthful, and I see you act a different way when you're saying something that I already know is a lie. So it's kind of nice because you're lying, thinking you're helping yourself, but it's showing me what you look like and how your body reacts when you lie.

"* * * * *

"[GATES:] And that's what I'm saying. If you're just going to say, 'Oh, everybody's a liar. All these people that I trust that are family to me, that consider me an uncle, and, you know, I'm like a son to them, they're all suddenly lying to me. They all lied about me, they have no reason to be lying about me, because they just are. Believe me, I didn't do it. I wasn't there. * * *' Why should I trust you if you lied to me. You're telling me to go against logic.

"Now, if you just told me, 'Yeah, I did it.' This is why and this is who I am,' then maybe I could believe who you are. But right now, you're already lying to me, so why would I believe who you're saying you are? It goes against what you're showing me that you are."

Defendant moved to redact parts of the videotape that he contended were inadmissible for several reasons. In an addendum to his motion, defendant cited specific objections to 14 excerpts of the recording, including those quoted above. The only argument that is relevant to this appeal is defendant's contention that Gates's comments on the credibility or truthfulness of other witnesses were not admissible. The following two paragraphs are the entirety of what defendant argued to the trial court on that issue:

"Throughout the interview, Detective Gates invites the defendant to offer his opinion about the character or credibility of other witnesses. She baits the defendant to label other witnesses as 'liars.' The detective also offers her own frequent assessment of whether a particular witness' story is credible. In at least one exchange, she improperly vouched for the credibility of [A] and [D] by referencing the out-of-court statements of unidentified third persons who believe the children are 'not liars' who 'make up false accusations about people' and who have no allegations of abuse of any kind in the past. These exchanges and comments are inadmissible.

"'The law applicable to this issue is well understood. This court has long held that one witness may not give an opinion on whether he or she believes another witness is telling the truth.' *State v. Lupoli*, 348 Or 346, [357, 234 P3d 117] (2010). The Oregon Supreme Court has repeatedly condemned the use of even isolated incidents of vouching testimony. *State v. Milbradt*, 305 Or 621, [629, 756 P2d 620] (1988). (No witness '*may render an opinion on whether a witness is credible in any trial conducted in this state...*' [(emphasis in original)]."

The trial court denied defendant's motion as to the admissibility of Gates's comments in the video, ruling, in pertinent part:

"THE COURT:   The rest of the thing * * * falls into two categories: * * * number one, * * * this is not * * * where * * *

one witness is testifying, giving his opinion as to another witness's credibility.

"It's [a] fair comment when the officer during [her] interrogation says, 'Well, somebody else told me this and somebody else told me that.' And so I don't think that's a violation of the rule and so [she'll] be allowed to do that.

"As far as the officer's making statements that some witnesses said this and some witnesses said that, which is, of course, somewhat hearsay, * * * I think [because] it's * * * taken in the context of the interrogation the intent is to try to get the defendant's response."

On appeal, defendant argues that the referenced parts of the recording were inadmissible under OEC 403 because their probative value was "substantially out-weighed" by the danger of unfair prejudice to defendant. The state objects that defendant's argument is unpreserved because defendant did not raise OEC 403 before the trial court; defendant only invoked the general rule that witnesses may not opine on the credibility of other witnesses.

As noted above, defendant's argument to the trial court was very brief. In the addendum to his motion, where he simply listed the excerpts of the recording to which he was objecting, defendant included a bare citation to OEC 403. Defendant did not, however, develop any argument under OEC 403 in his brief to the trial court, although he did raise OEC 403 in support of some other evidentiary challenges. Nor did defendant cite the case on which he relies heavily in his appeal, *State v. Southard*, 347 Or 127, 140-41, 218 P3d 104 (2009) (holding that medical diagnosis of child sex abuse is inadmissible, under OEC 403, in the absence of physical evidence, because it poses the risk that the "jury will not make its own credibility determination, which it is fully capable of doing, but will instead defer to the expert's implicit conclusion that the victim's reports of abuse are credible"). Instead, as noted above, defendant simply argued that Gates's comments were "inadmissible," citing *Lupoli* and *Milbradt* for the rule that witnesses may not testify as to other witnesses' credibility. *See, e.g., Lupoli*, 348 Or at 357 ("This court has long held that one witness may not give an opinion on whether he or she believes another witness is telling the truth.").

The principle that defendant argued to the trial court is different from what he now argues. Below, defendant relied on the *Lupoli* rule that witnesses may not opine on other witnesses' credibility; defendant now makes an OEC 403/*Southard* "unfair prejudice" argument. The principles are distinct, as illustrated in *Lupoli*, where the Supreme Court declined to engage in an OEC 403 analysis (because the defendant had failed to assign error on that ground), *id.* at 357, but proceeded to hold that the trial court had erred in allowing "vouching" testimony. *Id.* at 362. As the state correctly points out, defendant's arguments below did not give the trial court an opportunity to undertake an OEC 403 analysis. If defendant had made an OEC 403 argument, the trial court would have had occasion to weigh the probative value against the asserted prejudice, make a record of its findings, and give an appropriate limiting instruction if the court deemed it necessary. Instead, the trial court never addressed OEC 403 or *Southard,* because defendant did not raise them.

Because defendant did not make the argument that he now makes on appeal, we may entertain defendant's new argument only if defendant can establish plain error on the part of the trial court. *State v. Higgins*, 258 Or App 177, 179, 308 P3d 352 (2013) ("We may consider, under ORAP 5.45(a), unpreserved issues if the error (1) is one of law; (2) is apparent, in that the legal point is obvious, not reasonably in dispute; and (3) appears on the face of the record, such that we need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." (quoting *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (internal quotation marks and punctuation omitted.))). Defendant has not requested plain-error review, however. Accordingly, we decline to further address the issue. *See, e.g., State v. Tilden*, 252 Or App 581, 589, 288 P3d 567 (2012) ("We ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so, and for good reason—it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error.").

On appeal, defendant merges the *Lupoli* argument and the OEC 403/*Southard* argument together, even though, as just explained, they are not the same. Although we will not consider defendant's unpreserved argument under OEC 403, to the extent that defendant intended to reprise the argument that he actually made below—that Gates's comments were inadmissible "vouching," regardless of any balancing test under OEC 403—we note that the Supreme Court's *Lupoli* line of cases has involved in-court testimony, not (as in this case) out-of-court statements admitted as evidence. *See, e.g., State v. Middleton,* 294 Or 427, 657 P2d 1215 (1983); *State v. Odoms,* 313 Or 76, 829 P2d 690 (1992). In *Lupoli,* the Supreme Court held that, in addition to barring opinion testimony from one trial witness as to the credibility of another trial witness, the rule also prohibits a trial witness from opining on the credibility of a nonwitness complainant. 348 Or at 365 ("In fact, all of the reasons for preventing one witness from vouching for another witness's credibility at trial apply with equal or greater force when the nonwitness is an unavailable complainant. In that circumstance, the defendant does not have the ability to confront the complainant or to impeach the accusations against him or her."). *Lupoli* left intact, however, the holding in *Odoms* that the prohibition does not encompass statements commenting on credibility that were made out of court. *Odoms,* 313 Or at 83-84 (citing 1 *McCormick on Evidence* § 18, 75 (4th ed 1992) for the proposition that "the opinion rule has no sensible application to statements made out-of-court"). Accordingly, even if defendant had framed his argument under *Lupoli* rather than under OEC 403 and *Southard,* that argument would fail.

For the foregoing reasons, we conclude that the trial court did not err.

Affirmed.