No. 60          September 22, 2016          323

# IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

BRIAN JAMES CHANDLER,
*Petitioner on Review.*

(CC CR1101757; CA A152098; SC S063096)

On review from the Court of Appeals.*

Argued and submitted November 13, 2015.

Eric Johansen, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

BALDWIN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

   *   On appeal from Clackamas County Circuit Court, Ronald D. Thom, Judge. 269 Or App 388, 344 P3d 543 (2015).

   **  Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**BALDWIN, J.**

In this criminal case, defendant was convicted of two counts of first-degree sexual abuse. ORS 163.427. Defendant assigns error to the trial court's admission of a videotaped pretrial interrogation of defendant by Detective Gates. The videotape, which was played for the jury, included statements by Gates indicating her belief that defendant was lying and that the victims were telling the truth. On appeal, defendant argued that the trial court erroneously denied his motion to redact Gates's statements, because, under OEC 403, the prejudicial impact of those statements outweighed their probative value. The Court of Appeals concluded that defendant had failed to preserve his argument under OEC 403. The court rejected defendant's remaining argument that Gates's statements constituted impermissible vouching testimony. We allowed review and, for the reasons we explain below, affirm.

## I.  BACKGROUND

The Court of Appeals summarized the undisputed facts as follows:

"The conduct at issue occurred at the home of D, the 12-year-old victim. She lived there with her mother, father, and two brothers. A, the seven-year-old victim, is related to the family and stayed at the home one night. Defendant was a close friend of the family and also stayed that night. Both D and A later reported to family members that defendant had touched them. D said that she awoke to find defendant rubbing her thigh near her genital area. A said that defendant had touched her under her clothes. She later told a CARES interviewer that defendant had touched her on her 'pee' with his hand.

"Gates received a report of suspected abuse from the Department of Human Services and attended A's CARES interview. Gates later interviewed defendant; at the end of that approximately two-hour interview, she arrested defendant. That videotaped interview is the subject of this appeal. In the interview, defendant repeatedly denied the allegations. Gates made numerous comments indicating that she believed the victims and that defendant was not being truthful."

*State v. Chandler*, 269 Or App 388, 389-90, 344 P3d 543 (2015).

Before trial, defendant moved to redact portions of the videotaped interview, arguing that those portions were inadmissible for various reasons. As relevant to this appeal, defendant contended that certain of Gates's statements constituted impermissible comments on the credibility of other witnesses that are categorically inadmissible. We do not quote all of the challenged excerpts; however, the following excerpts are representative of the type of statements that Gates made throughout the interview to the effect that she believed the victims to be truthful and defendant to be untruthful:

"[GATES]:    [B]ut if I have someone saying a completely different story than everyone else—I have a little kid saying you did something and she's crying and scared, doesn't want to go back to grandma and grandpa's, has no reason to lie about this, has no reason to pin it on you. She doesn't know you.

"* * * * *

"I have a little girl that's saying what she's saying and I've got video of it and it's extremely telling 'cause it's heart breaking. The girl had no history of, you know, lying, making accusations against people that have turned out to be lies.

"* * * * *

"[GATES]:    * * * So here's how I work. When I talk to people[,] usually the suspect is the very last person I talk to 'cause I want to know as much about you as I can. I want to know * * * as much about that incident, what people saw and what people heard, you know, what you talked to people about since that happened.

"I want to know everything. I want to know about your past. I want to know what you're doing now. And I want to talk to you and talk to you like I don't know any of it and see if you're going to lie to me about stuff you don't even have to lie about.

"And that's exactly what you've done. And so some of [the] stuff I know you've been honest about. And I can see

you act a certain way when you say something that's truthful and I see you act a different way when you're saying something that I already know is a lie.

"So it's kind of nice because you're lying[,] thinking you're helping yourself, but it's showing me what you look like and how your body reacts when you lie.

"* * * * *

"[GATES]:   And that's what I'm saying. If you're just going to say, 'Oh, everybody's a liar. All these people that I trust that are family to me that consider me an uncle, and, you know, I'm like a son to them, they're all suddenly lying to me. They all lied about me and they have no reason to be lying about me because they just are.

"'Believe me, I didn't do it. I wasn't there. I suddenly have amnesia on these parts. * * * But trust me[,] I'm not a bad guy.' * * * Why should I trust you if you lied to me? You're telling me to go against logic.

"Now, if you just told me, 'Yeah, I did it. This is why and this is who [I am],' then maybe I could believe who you are. But right now you're already lying to me, so why would I believe who you're saying you are? It goes against what you're showing me that you are."

The trial court denied defendant's motion to redact, concluding that the rule prohibiting one witness from commenting on the credibility of another witness did not apply to the challenged statements.[1] The court explained:

"The rest of the thing * * * falls into two categories: * * * number one, * * * this is not a rule where * * * one witness is testifying, giving his opinion as to another witness's credibility.

"It's [a] fair comment when the officer during [her] interrogation says, 'Well, somebody else told me this and somebody else told me that.' And so I don't think that's a violation of the rule and so [s]he'll be allowed to do that.

"As far as the officer[']s making statements that some witnesses said this and some witnesses said that, which is, of course, somewhat hearsay, but I think[,] * * * taken in

_____

[1] The court granted defendant's motion to redact as to other portions of the videotaped interview not relevant to this appeal.

the context of the interrogation[,] the intent is to try to get the defendant's response.

"And, therefore, I don't think there's any violation of any rules."

Defendant appealed, assigning error to the trial court's denial of his motion to redact. Defendant argued that Gates's statements indicating her belief that defendant was untruthful and that the victims were truthful constituted impermissible vouching evidence, and that they should have been excluded under OEC 403.[2] The state responded that defendant failed to preserve his argument under OEC 403 and that, even assuming his argument was preserved, the trial court did not abuse its discretion by admitting the challenged evidence.

The Court of Appeals agreed with the state that defendant had failed to preserve his argument and affirmed. *Chandler*, 269 Or App at 389. The court noted that defendant had not developed any argument under OEC 403 in his motion to redact, nor cited the primary case on which his appellate argument relied—*State v. Southard*, 347 Or 127, 140-41, 218 P3d 104 (2009) (holding that medical diagnosis of child sex abuse is inadmissible under OEC 403 in absence of physical evidence, because it poses risk that "the jury will not make its own credibility determination, which it is fully capable of doing, but will instead defer to the expert's implicit conclusion that the victim's reports of abuse are credible"). Instead, defendant had argued in the trial court only that Gates's comments were inadmissible under the rule that one witness may not opine on the credibility of another witness. The Court of Appeals noted that those two principles—the principle that a witness may not opine on another witness's credibility and the OEC 403/*Southard* unfair prejudice principle—are distinct. *Chandler*, 269 Or App at 393. In the court's view, had defendant made an OEC 403

---

[2] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

argument, "the trial court would have had occasion to weigh the probative value against the asserted prejudice, make a record of its findings, and give an appropriate limiting instruction if the court deemed it necessary." *Id.* The court thus concluded that defendant failed to preserve his argument under OEC 403, and, because he had not requested plain-error review of that argument, the court did not address it further. *Id.*

The Court of Appeals rejected defendant's remaining argument that the trial court erred in admitting Gates's statements because those statements impermissibly commented on the credibility of other witnesses. *Id.* at 394. In synthesizing this court's case law on the rule prohibiting one witness from commenting on the credibility of another witness—also known as the rule against "vouching" testimony—the court appeared to draw a hard line between credibility opinions that are rendered in court versus outside of court. The court noted that this court's line of vouching cases "has involved in-court testimony, not (as in this case) out-of-court statements admitted as evidence." *Id.* In particular, the Court of Appeals cited this court's decision in *State v. Odoms*, 313 Or 76, 829 P2d 690 (1992), in support of its conclusion that the rule against vouching testimony does not encompass out-of-court statements commenting on a witness's credibility. *Chandler*, 269 Or App at 394 (citing *Odoms*, 313 Or at 83-84). Because the challenged statements in this case were made outside of court, the Court of Appeals concluded that defendant's argument under the vouching rule failed. *Id.*

On review, defendant reprises his contention that the trial court erred in admitting the portions of the videotaped interview in which Gates indicated her belief that defendant was lying and that the victims were telling the truth. Defendant argues that those statements, which were admitted into evidence as an exhibit, directly and improperly commented on his credibility and the credibility of the victims. Even if those statements did not constitute direct vouching testimony, defendant contends that they were tantamount to direct vouching, because they invaded the jury's role of determining witness credibility. Defendant also reprises his contention that the trial court erred by not

excluding Gates's statements as unfairly prejudicial under OEC 403.

The state, in response, argues that the categorical rule against vouching testimony should not be applied to out-of-court statements about a witness's credibility that are not offered for the truth of the matter asserted—*i.e.*, that are not offered to prove the witness's credibility or lack of credibility. The state contends that applying the vouching rule to such statements would sweep too broadly and exclude relevant, important evidence. In this case, the state argues that the trial court did not err in admitting Gates's statements, because those statements were not offered for their truth. The state also argues that defendant failed to preserve his alternative argument under OEC 403.

## II.   ANALYSIS

### A.   *Comments on Witness Credibility*

This court has long held that one witness may not comment on the credibility of another witness. *State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010); *see also State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983) ("We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth."). That rule developed largely in response to the use of expert psychiatric testimony to attack a witness's character. As this court observed in *State v. Walgraeve*, 243 Or 328, 333, 413 P2d 609 (1966) (denying rehearing), the use of expert testimony in that manner "would create a class of cases in which opinion evidence would, in fact, determine the credibility of witnesses. Unless the function of a jury is to find the truth, its role is devoid of substance." The rule prohibiting vouching testimony thus serves the policy goals of ensuring that the jury remains the sole arbiter of witness credibility and that the jury's role in assessing witness credibility is not usurped by another witness's opinion testimony. *See State v. Snider*, 296 Or 168, 172, 674 P2d 585 (1983) (noting that "vice" of vouching testimony is that jury might give "special credence" to such testimony, "implying a guarantee of the witness's veracity").

Although the vouching rule[3] is an evidentiary rule, it is not codified in the Oregon Evidence Code. Rather, is a judicially created rule. *See Middleton*, 294 Or at 438 (expressly adopting rule); *State v. Brown*, 297 Or 404, 443, 687 P2d 751 (1984) (noting that rule prohibiting witness from passing upon credibility of another witness is "the long-standing position of this court"). Perhaps as a result, the exact contours of the rule may be difficult to trace. Since its inception, however, this court has had a number of opportunities to clarify the rule. For example, this court has held that the rule applies to direct comments on the credibility of another witness, as well as to statements that are "tantamount" to stating that another witness is credible. *See [State v. Beauvais](#)*, 357 Or 524, 543, 354 P3d 680 (2015) ("A direct comment on the credibility of a witness or a statement that is 'tantamount' to stating that another witness is truthful is not admissible[.]"). This court also has made clear that the rule applies to credibility opinions about statements that a witness made either at trial or on some other occasion. *See State v. Keller*, 315 Or 273, 284-85, 844 P2d 195 (1993) ("[T]his rule applies whether the witness is testifying about the credibility of the other witness in relation to the latter's testimony at trial or is testifying about the credibility of the other witness in relation to statements made by the latter on some other occasion or for some reason unrelated to the current litigation."). Additionally, the rule applies to comments about the credibility of either a witness or a nonwitness complainant. *See Lupoli*, 348 Or at 364-65 (holding that expert testimony improperly vouched for credibility of nonwitness complainant).

This case requires us to consider another facet of the vouching rule—namely, whether, and how, the rule may be applied to one witness's unsworn, out-of-court statements about the credibility of another witness. Two prior decisions of this court are relevant to that assessment: *Odoms*, 313 Or 76, and *State v. Charboneau*, 323 Or 38, 913 P2d 308 (1996).

---

[3] The rule that one witness may not comment on the credibility of another witness applies both to comments that bolster and to comments that undermine a witness's credibility. In this opinion, we use the phrase "vouching rule" to refer to the general prohibition against both types of credibility commentary.

In *Odoms*, a detective testified at the defendant's trial and recounted statements that the detective had made while interrogating the defendant indicating his belief that the victim was truthful. 313 Or at 79-80. On review, the defendant argued that the detective's testimony was an impermissible comment on the victim's credibility and should have been excluded. *Id.* at 81. This court recited the general rule from *Middleton*—*i.e.*, that one witness may not give an opinion as to whether he or she believes that another witness is telling the truth—and observed that "the point of *Middleton* was only to preclude testimony by *one trial witness* about whether *another trial witness* is telling the truth[.]" *Id.* at 82 (emphases in original). This court then noted that "a relevant out-of-court statement, recounted at trial, generally may not be excluded merely because it is phrased in the form of an opinion." *Odoms*, 313 Or at 83. From those observations, this court concluded that the trial court had not erred in overruling the defendant's "improper opinion evidence" objection to the detective's statements. *Id.* at 84.

Justice Unis specially concurred, offering a different explanation for this court's holding. In his view, an out-of-court opinion rendered as to another witness's credibility is susceptible to an improper opinion objection "only if it is offered as opinion testimony, *i.e.*, for the truth of the judgment or belief it expresses." *Id.* at 85 (Unis, J., specially concurring). Applying that rule to the facts of *Odoms*, Justice Unis concluded that the detective's testimony had not been offered for its truth; instead, it had been offered to show its effect on the defendant's state of mind—specifically, how and why the defendant had changed the story he had given the detective over the course of three interviews. *Id.* Because the detective's testimony had not been offered for its truth, Justice Unis concluded that it was not susceptible to an improper opinion objection. *Id.*

In *Charboneau*, a witness entered into a plea agreement with the state in exchange for his testimony at the defendant's trial. At trial, the court admitted portions of the plea agreement that contained the state's opinion that it found the witness to be credible and a provision that the

agreement would be "null and void" if the witness did not testify truthfully. 323 Or at 42-43. The defendant appealed the trial court's admission of those portions of the plea agreement, arguing that they contained improper comments on the credibility of the state's witness. On review, this court noted that the case did not present the usual situation in which one trial witness offers an opinion about the truthfulness of another witness. *Id.* at 47. Nevertheless, the court determined that the trial court's admission of the state's credibility opinion by means of the plea agreement presented an analogous risk. *Id.* The court noted that the state could not have called the investigating detective to testify directly about whether he believed the witness to be truthful. For the same reasons, the court concluded that the state could not introduce a credibility opinion by means of an exhibit. Accordingly, this court held that "[a] witness's testimony *or an exhibit* may not, explicitly and directly, contain an opinion as to a trial witness's credibility." *Id.* at 48 (emphasis added).

We recognize that this court's holdings in *Odoms* and *Charboneau* appear to be in conflict. Whereas *Charboneau* stands for the proposition that a comment on a witness's credibility may not be introduced through either trial testimony or a trial exhibit, *Odoms* indicates that the vouching rule does not apply to credibility opinions rendered outside of court. *See* 313 Or at 82-83 (holding that trial court did not err in overruling defendant's vouching objection to detective's out-of-court statements; noting that "the point of *Middleton* was only to preclude testimony by *one trial witness* about whether *another trial witness* is telling the truth"). Indeed, the Court of Appeals relied on *Odoms* to draw such a categorical distinction between in-court and out-of-court credibility opinions, holding that the vouching rule does not apply to the latter. That principle is not an accurate statement of Oregon law, however. Rather, as this court has previously recognized, an out-of-court statement about the credibility of a trial witness may become the functional equivalent of trial testimony once that statement is admitted into evidence at trial. *See, e.g., Charboneau,* 323 Or at 47-48 (portion of plea agreement containing prosecutor's opinion that state's witness was credible, admitted

into evidence, constituted improper comment on credibility of state's witness); *Snider*, 296 Or at 172 (provision of plea agreement requiring state's witness to take and pass polygraph examination to verify the witness's trial testimony, admitted into evidence, constituted improper credibility comment).

We therefore disavow the reasoning of the majority in *Odoms* and expressly recognize that the bounds of the vouching rule are not defined by the setting in which the credibility comment was uttered. Instead, we adopt the following rule, originally articulated by Justice Unis in his concurrence in *Odoms*: When a person makes an out-of-court statement about the credibility of a witness or non-witness complainant, that statement is subject to the categorical prohibition against vouching evidence only if the statement is offered for the truth of the credibility opinion that it expresses. Put another way, a court does not err in admitting an out-of-court statement as to the credibility of a witness or nonwitness complainant if the statement is offered for a relevant, non-opinion purpose.[4]

As the state acknowledges, and as we will explain, that does not mean that such a statement is admissible. Even if an out-of-court statement is not subject to a vouching objection, the evidence still must be relevant under OEC 401, and it cannot be unduly prejudicial under OEC 403. In addition, under appropriate circumstances, a defendant may request a limiting instruction under OEC 105.

Proceeding to the facts of this case, we conclude that the challenged portions of the interview between Gates and defendant were not admitted for the truth of the credibility opinions that they contained and therefore were not categorically inadmissible. We note, initially, that the record is somewhat sparse as to the purpose for which

---

[4] The principle articulated by Justice Unis also harmonizes any apparent conflict between the holdings in *Odoms* and *Charboneau*. Whereas the challenged evidence in *Charboneau* was admitted to bolster the credibility of a witness, the challenged evidence in *Odoms* was admitted to show its effect on the defendant's state of mind. *See Charboneau*, 323 Or at 42 (plea agreement offered to rehabilitate state's witness after his credibility had been attacked on cross-examination); *Odoms*, 313 Or at 85 (Unis, J., specially concurring) (detective's statement offered to show how and why the defendant had changed his story).

the challenged portions of the interview were offered. For example, neither defendant's motion to redact nor the prosecutor's response thereto addressed the purpose for which Gates's statements would be offered at trial. We find significant, however, defendant's arguments and the trial court's ruling on a related issue. In defendant's motion to redact, he argued, in addition to his argument under the vouching rule, that Gates's unsworn, out-of-court statements during the videotaped interview should be excluded as inadmissible hearsay. The trial court disagreed, ruling: "As far as [Gates] making statements that some witnesses said this and some witnesses said that, which is, of course, somewhat hearsay, but I think[,] *** taken in the context of the interrogation[,] the intent is to try to get the defendant's response." In other words, the trial court concluded that the probative value of Gates's statements lay not in their truth, but rather in the context that they provided for defendant's responses.

The record at trial supports that conclusion. At trial, the prosecutor did not use Gates's statements from the videotaped interview to bolster the victims' credibility or to undermine defendant's. Indeed, when the prosecutor questioned Gates on the stand, he did not mention any of the credibility assessments that she had made during the interview. We therefore agree with the trial court's assessment that Gates's credibility statements made during the interview were admitted not to prove that defendant was untruthful or that the victims were truthful, but rather as context for the responses that those statements elicited from defendant.

In summary, we conclude that a person's out-of-court statement about the credibility of a witness or nonwitness complainant is not categorically inadmissible at trial if it is offered for a relevant, non-opinion purpose. In this case, Gates's out-of-court comments indicating her belief that defendant was lying and that the victims were telling the truth were not offered to prove the truth of those beliefs. Rather, the trial court understood that they were going to be offered to provide relevant context for the statements that defendant made throughout the interview, a viewpoint that defendant did not challenge. We therefore conclude that

the trial court did not err in denying defendant's motion to redact on the ground that Gates's statements constituted prohibited vouching.

B.   *OEC 403*

As explained, the fact that statements are not categorically prohibited under the vouching rule does not mean that they are necessarily admissible. In appropriate circumstances, such statements may be excluded because they do not meet the requirements of OEC 401 or OEC 403 or other evidentiary rules. Accordingly, we must determine whether defendant made a preserved objection to the admissibility of the contested statements in addition to his argument that the statements were categorically inadmissible under the vouching rule.

In defendant's motion to redact, he argued that certain portions of the videotaped interview with Gates should be redacted, for a variety of reasons. The entirety of his argument under the vouching rule was as follows:

"Throughout the interview, Detective Gates invites the defendant to offer his opinion about the character or credibility of other witnesses. She baits the defendant to label other witnesses as 'liars'. The detective also offers her own frequent assessment of whether a particular witness' story is credible. In at least one exchange, she improperly vouched for the credibility of [A] and [D] by referencing the out-of-court statements of unidentified third persons who believe the children are 'not liars' who 'make up false accusations about people' and who have no allegations of abuse of any kind in the past. These exchanges and comments are inadmissible.

"'The law applicable to this issue is well understood. This court has long held that one witness may not give an opinion on whether he or she believes another witness is telling the truth.' *State v. Lupoli*, 348 Or 346 (2010). The Oregon Supreme Court has repeatedly condemned the use of even isolated incidents of vouching testimony. *State v. Milbradt*, 305 Or 621, 629, 632, 756 P2d 620, at 624, 626 (1988)[ (n]o witness '*may render an opinion on whether a witness is credible in any trial conducted in this state*['] (italics in original])."

Defendant also attached an addendum to his motion that identified the specific portions of the interview to which he objected and the bases for his objections. In that addendum, defendant included citations to OEC 403, among other evidentiary rules. Defendant did not, however, develop any argument in the addendum. As noted, the Court of Appeals concluded that defendant's bare citation to OEC 403, absent any developed argument under that rule, was insufficient to preserve his argument under the rule. We agree with that conclusion.

On review, however, defendant contends that, even if his citation to OEC 403 in the addendum to his motion to redact was insufficient to preserve an OEC 403 argument, he nevertheless preserved that argument by virtue of the objection that he raised under the vouching rule. In his view, this court's prior cases—in particular, *Brown* and *Southard*—support the proposition that the vouching rule encompasses a requirement that a trial court engage in OEC 403 balancing.[5]

We are not persuaded that a party's vouching objection is sufficient to alert a trial court that the party also seeks a balancing of the probative value of the challenged evidence against the prejudicial effect of that evidence. The two cases that defendant cites for that proposition, *Brown* and *Southard*, were not, as defendant characterizes them, cases in which this court engaged in OEC 403 balancing as part of a vouching analysis. Rather, those cases involved the admissibility of scientific evidence—an analysis that includes, as one component, a requirement that the prejudicial effect of the evidence not outweigh its probative value under OEC 403. *See Southard*, 347 Or at 133 (to be admissible, scientific evidence must (1) be relevant under OEC 401; (2) possess sufficient indicia of scientific validity and be helpful to

---

[5] The state contends that defendant failed to renew his argument under OEC 403 on review and that he therefore abandoned that argument. During oral argument before this court, however, defendant clearly renewed his contention that Gates's statements should have been excluded under OEC 403. He also argued generally in his brief on the merits that Gates's statements should have been excluded based on the risk that the jury would place undue weight on those statements and abdicate its role in assessing witness credibility. Although it is a close call, under the circumstances, we conclude that defendant did not abandon his argument under that rule.

jury under OEC 702; and (3) be more probative than prejudicial under OEC 403). In conducting that balancing test, this court concluded that the scientific evidence at issue in each case posed a risk that jurors might be prejudiced by a misplaced "aura of reliability" surrounding the evidence, thereby leading the jurors to abdicate their traditional role of assessing the credibility of witnesses. *See Brown*, 297 Or at 438-41 (admissibility of polygraph evidence); *Southard*, 347 Or at 141 (admissibility of medical diagnosis of sexual abuse). Accordingly, this court concluded in each case that the prejudicial effect of the evidence at issue outweighed its probative value under OEC 403. *Brown*, 297 Or at 442; *Southard*, 347 Or at 141. Contrary to defendant's contention, this court's OEC 403 balancing in those cases did not arise out of a vouching analysis.

In addition to the lack of support in this court's case law for the proposition that OEC 403 balancing is encompassed within the vouching rule, there are prudential reasons to not conflate those two evidentiary rules. From a preservation perspective, a vouching objection and an OEC 403 objection request different actions from the trial court. When a party objects to evidence as an improper comment on the credibility of a witness, the trial court must determine only whether the vouching rule applies to the challenged evidence; if it does, then the evidence is categorically inadmissible. *See, e.g.*, *Middleton*, 294 Or at 438 (reversible error to admit opinion testimony from one witness on credibility of another witness). In contrast, when a party raises an objection under OEC 403, the trial court must engage in the balancing test described above to determine whether the otherwise admissible evidence should be excluded due to its prejudicial effect. Given the different nature of the actions that those two evidentiary objections require of a trial court, we conclude that a party's objection under the vouching rule is insufficient, by itself, to alert a trial court that the party also seeks OEC 403 balancing. Rather, a party must specifically raise an objection under OEC 403 to preserve an argument under that rule.

In this case, defendant failed to raise a specific argument that Gates's statements about the credibility of defendant and the victims should have been excluded as

unfairly prejudicial under OEC 403. We therefore conclude that his argument under that rule is unpreserved.[6] Had defendant specifically requested that the trial court weigh the probative value of Gates's statements against their prejudicial effect, the court's ruling as to the admissibility of those statements might well have been different. We do not disagree that such statements are troubling. Indeed, Gates's claim of expertise in determining truthfulness posed the risk that this court identified in *Brown—i.e.*, that jurors might place undue weight on the "aura of reliability" created by such a claim. *See Brown*, 297 Or at 439 (in determining risk of unfair prejudice under OEC 403, courts in some cases must "evaluate the degree to which the trier of fact may be overly impressed or prejudiced by a perhaps misplaced aura of reliability or validity of the evidence, thereby leading the trier of fact to abdicate its role of critical assessment"). The proper procedure for seeking the exclusion of such statements, however, is to raise an objection under OEC 403, thereby triggering the trial court's duty to weigh those statements' prejudicial effect against their probative value.[7]

## III.   CONCLUSION

We conclude that the general rule that one witness may not comment on the credibility of another witness does not apply to Gates's statements, because those statements were not offered for the truth of the credibility opinions that they expressed. Rather, Gates's statements were offered for the relevant, non-opinion purpose of providing context for the statements that defendant made during the interview. Accordingly, the trial court did not err in denying defendant's motion to redact on the ground that Gates's statements constituted impermissible vouching. We further conclude that defendant failed to preserve his remaining argument that

---

[6] Defendant has not requested plain-error review in this court or the Court of Appeals; we therefore do not address whether such review is warranted.

[7] As noted, a criminal defendant may have other evidentiary rules at his or her disposal for challenging this type of evidence. For example, a defendant could raise an objection under OEC 401 to the logical relevancy of statements such as the ones that Gates made during the interview. A defendant also may seek a limiting instruction under OEC 105.

Gates's statements should have been excluded as unfairly prejudicial under OEC 403.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.