Argued and submitted April 26, 2016; Case Numbers C122303CR and C131573CR remanded for resentencing, otherwise affirmed September 13, 2017; petition for review denied January 18, 2018 (362 Or 389)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CRESENCIO GARCIA-ROCIO,
*Defendant-Appellant.*

Washington County Circuit Court
C122303CR, C131573CR;
A156847 (Control), A156848

403 P3d 470

Kenneth A. Kreuscher argued the cause and filed the brief for appellant.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before DeVore, Presiding Judge, and James, Judge, and Duncan, Judge pro tempore.*

_____

\* James, J., *vice* Flynn, J. pro tempore.

## DUNCAN, J. pro tempore

Defendant appeals judgments in two consolidated cases—Washington County Circuit Court Case Numbers C122303CR and C131573CR—in which he was convicted of multiple sexual offenses against two victims.[1] Defendant raises six assignments of error. As explained below, we reject all but defendant's fourth assignment of error, which pertains to Case Number C131573CR. In that assignment, he challenges the length of the post-prison supervision terms imposed on two counts of unlawful sexual penetration in the first degree. The state concedes that the post-prison supervision terms are too long. We agree. Accordingly, we remand both cases for resentencing, because they were consolidated for trial, and we otherwise affirm.

Defendant's first three assignments of error concern the admission of out-of-court statements made by a detective to defendant during an interview about the victims' allegations. During the interview, defendant denied the allegations and, in response, the detective repeatedly asserted that defendant was lying and the victims were telling the truth.[2] Ultimately, defendant made inculpatory statements.

At trial, the state sought to introduce a recording of the interview. Defendant objected to the admission of the detective's statements regarding the credibility of defendant and the victims, asserting that the statements were hearsay and improper comments on the credibility of witnesses. *See State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983)

---

[1] In Case Number C122303CR, defendant was convicted of one count of rape in the first degree (Count 1) and five counts of sexual abuse in the first degree (Counts 2, 3, 4, 6, and 8). Defendant was also charged with two counts of unlawful sexual penetration in the first degree (Counts 5 and 7), which were dismissed before trial. In Case Number C131573CR, defendant was convicted of two counts of unlawful sexual penetration in the first degree (Counts 1 and 2).

[2] For example, the detective told defendant, "I don't want to sit around listening to you lie to me. * * * I'm tired of sitting here listening * * * to you lie to me." Later, he told defendant, "Be man enough to tell me the truth. I'll have more respect for you if you tell me the truth." The detective also told defendant, "I know you remember it," and "This is what I do for a living."

Regarding one of the victims, the detective told defendant, "She has a really clear memory. She remembers this. She's always remembered." And, regarding both victims and some of their family members, the detective said, "The memory that they all have is clear to them now[.] * * * All of their memories are very clear."

(a witness "may not give an opinion on whether [the witness] believes [another] witness is telling the truth"); *see also State v. Keller*, 315 Or 273, 285, 844 P2d 195 (1993) (the prohibition against vouching applies "whether the witness is testifying about the credibility of the other witness in relation to the latter's testimony at trial or * * * in relation to statements made by the latter on some other occasion"). The state responded that the statements were "not being offered for [their] truth." Instead, they were being offered "to show [defendant's] reaction to being confronted with a particular statement." The trial court agreed with the state, and ruled that the statements did not constitute impermissible comments on the credibility of witnesses, stating:

> "Okay. Well, let me start off by saying this was a police interview. And even though police interviews are done in different—with different techniques, some nice guy, some bad guy, this is I believe an attempt by the Defense to sanitize the complete interview. And all the objections are overruled.

> "It's all coming in. I do not find that it's hearsay. I do not find that it's vouching. I do not find that, like the last one we talked about, that it necessarily implies what was said or not said on the interview."

Thereafter, the state introduced the recording, including the detective's statements. In response, defendant moved for a mistrial and, in the alternative, requested that the jury be instructed to disregard the statements.

After the presentation of the evidence, the trial court instructed the jury, at the state's request, on its use of the detective's statements. Specifically, the trial court told the jury, "Statements that were made by [the detective] to the Defendant * * * during the video-recorded interview are not to be considered for their truth. Additionally, such statements should not be considered comments upon the credibility of any person or witness."

On appeal, defendant renews his argument that the detective's statements constitute improper comments on the credibility of witnesses, asserting that the trial court erred by (1) admitting the detective's statements, (2) denying defendant's motion for a mistrial after the admission of

the statements, and (3) failing to give a curative instruction regarding the statements.

After this case was argued, the Supreme Court issued its opinion in *State v. Chandler*, 360 Or 323, 380 P3d 932 (2016). As in this case, in *Chandler*, the defendant challenged the trial court's admission of statements a detective made during an interview of the defendant. The detective's statements indicated that she believed that the defendant was lying and the victims were telling the truth, and the defendant argued that they were categorically inadmissible because they violated the prohibition against comments on the credibility of witnesses.[3] The court first addressed the scope of the prohibition and ruled that it applies only if the comments are being offered for the truth of the credibility opinion they express:

> "When a person makes an out-of-court statement about the credibility of a witness or nonwitness complainant, that statement is subject to the categorical prohibition against vouching evidence only if the statement is offered for the truth of the credibility opinion that it expresses. Put another way, a court does not err in admitting an out-of-court statement as to the credibility of a witness or nonwitness complainant if the statement is offered for a relevant, non-opinion purpose."

*Id.* at 334. Turning to the facts of the case before it, the court noted that the detective's statements were not offered to prove the credibility of the defendant or the victims; instead they were offered "as context for the responses that those statements elicited from [the] defendant." *Id.* at 335.

---

[3] Among the statements at issue in *Chandler* were the detective's assertion that she knew that defendant had lied to her:

> "And so some of [the] stuff I know you've been honest about. And I can see you act a certain way when you say something that's truthful and I see you act a different way when you're saying something that I already know is a lie.
>
> "So it's kind of nice because you're lying[,] thinking you're helping yourself, but it's showing me what you look like and how your body reacts when you lie.
>
> "   *****
>
> "Now, if you just told me, 'Yeah, I did it. This is why and this is who [I am],' then maybe I could believe who you are. But right now, you're already lying to me, so why would I believe who you're saying you are?"

*Chandler*, 360 Or at 326-27 (brackets in *Chandler*).

Accordingly, the court held that "the trial court did not err in denying defendant's motion to redact [the detective's statements] on the ground that [the] statements constituted prohibited vouching." *Id.* at 336.[4]

*Chandler* controls our resolution of defendant's first three assignments of error in this case. Here, as in *Chandler*, the detective's statements indicating that he did not believe defendant, but he believed the victims, were not offered for the truth of his expressed beliefs. Instead, the state offered them to provide context for defendant's statements during the interview; that is, "to show [defendant's] reaction to being confronted with a particular statement," and the jury was instructed that the detective's statements were "not to be considered for their truth" or as "comments upon the credibility of any person or witness." Because the detective's statements were not admitted for the truth of the credibility opinions they contained, they were not categorically inadmissible. Therefore, the trial court did not err in admitting them over defendant's objection or in denying his related motion for a mistrial and request for a curative instruction.

As mentioned, in defendant's fourth assignment of error, he argues that the trial court erred when it imposed 100 months' imprisonment plus 20 years' post-prison supervision

---

[4] The Supreme Court emphasized that the defendant's only preserved challenge to the admissibility of the detective's statements was that the statements constituted impermissible comments on the credibility of witnesses; he had not preserved an argument that the statements were inadmissible under OEC 403, which precludes the admission of evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The court observed that the detective's statements were "troubling," and that the detective's "claim of expertise in determining truthfulness posed the risk that this court identified in [*State v. Brown*, 297 Or 404, 439, 687 P2d 751 (1984)]—*i.e.*, that jurors might place undue weight on the 'aura of reliability' created by such a claim." *Chandler*, 360 Or at 339. But the court explained, "The proper procedure for seeking exclusion of such statements, however, is to raise an objection under OEC 403, thereby triggering the trial court's duty to weigh those statements' prejudicial effect against their probative value." *Id.* The court also explained:

"[A] criminal defendant may have other evidentiary rules at his or her disposal for challenging this type of evidence. For example, a defendant could raise an objection under OEC 401 to the logical relevancy of statements such as the ones that [the detective] made during the interview. A defendant may also seek a limiting instruction under OEC 105."

*Id.* at 339 n 7.

on two counts of unlawful sexual penetration in the first degree, ORS 163.411, in Case Number C131573CR. The state concedes that the court erred, and we accept the state's concession.

At sentencing, the trial court announced that post-prison supervision for the counts would be "20 years minus time served." However, in the written judgment, the court simply imposed 20 years' post-prison supervision without subtracting time served. Because the written judgment is inconsistent with the trial court's oral ruling, ordinary preservation principles do not apply. *See State v. Selmer*, 231 Or App 31, 35, 217 P3d 1092 (2009), *rev den*, 347 Or 608 (2010) (finding exception to preservation requirement where error arose for the first time in judgment). We review a trial court's imposition of a felony sentence for errors of law. ORS 138.222; *State v. Mitchell*, 236 Or App 248, 235 P3d 725 (2010) (applying standard).

Here, unlawful sexual penetration in the first degree is a Class A felony, *see* ORS 163.411, subject to ORS 144.103[5] and ORS 161.605.[6] Those statutes limit the aggregate duration of incarceration and post-prison supervision to the maximum statutory indeterminate sentence length of 20 years. *See* ORS 144.103; ORS 161.605; OAR 213-005-0002(4) ("The term of post-prison supervision, when added to the prison term, shall not exceed the statutory maximum indeterminate sentence for the crime of conviction."). However, in its written judgment, the trial court sentenced defendant to 20 years' post-prison supervision *in addition to* 100 months' incarceration. Thus, the trial court erred by imposing a sentence that exceeded the duration permitted by ORS 144.103 and ORS 161.605.

In his fifth and sixth assignments of error, defendant contends that the trial court plainly erred by refusing to

---

[5] ORS 144.103 provides, in part:

"[A]ny person sentenced to a term of imprisonment for violating or attempting to violate ORS *** 163.411 *** shall serve a term of active post-prison supervision that continues until the term of the post-prison supervision, when added to the term of imprisonment served, equals the maximum statutory indeterminate sentence for the violation."

[6] ORS 161.605 provides, in part, that "[t]he maximum term of an indeterminate sentence of imprisonment *** [f]or a Class A felony [is] 20 years."

instruct the jury that it was required to return a unanimous verdict and by entering convictions based on a nonunanimous verdict. Those assertions are foreclosed by *State v. Bowen*, 215 Or App 199, 202, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 415 (2008), *cert den*, 558 US 815 (2009), and we reject them without further discussion. *See also, e.g., State v. Woods*, 284 Or App 559, 561 n 1, 393 P3d 1188, *rev den*, 361 Or 801 (2017) (rejecting, without discussion, the defendant's challenge to the trial court's failure to instruct the jury that the verdict must be unanimous).

Case Numbers C122303CR and C131573CR remanded for resentencing; otherwise affirmed.