***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted June 24; convictions on Counts 15, 17, and 18 reversed and remanded, remanded for resentencing, otherwise affirmed August 3; petition for review denied December 15, 2022 (370 Or 602)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MAXIMIANO FONSECA FONSECA,
aka Maximiano Fonseca,
*Defendant-Appellant.*

Lane County Circuit Court
19CR25452; A173824

Charles M. Zennaché, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

AOYAGI, J.

Convictions on Counts 15, 17, and 18 reversed and remanded; remanded for resentencing; otherwise affirmed.

**AOYAGI, J.**

Defendant was convicted of six counts of first-degree rape, ORS 163.375, six counts of first-degree sexual abuse, ORS 163.427, six counts of first-degree sodomy, ORS 163.405, and two counts of coercion, ORS 163.275. For the reasons explained below, we reverse defendant's convictions on the three counts as to which the jury returned nonunanimous guilty verdicts—Count 15 (first-degree sodomy), Count 17 (first-degree sexual abuse), and Count 18 (first-degree sexual abuse)—and we otherwise affirm.

### FACTS

In 2012 and 2013, defendant lived in Springfield, Oregon, in the same home as his granddaughter V (born 2005) and step-grandson J (born 2000). V and J later disclosed that, while living there, defendant sexually abused them. Defendant's son (V's father and J's stepfather) confronted defendant several times and, in 2019, contacted the police. V and J were interviewed in Des Moines, Iowa, where they were living at the time, while defendant was interviewed in Springfield. Defendant was subsequently charged with 20 counts of rape, sodomy, sexual abuse, and coercion for alleged conduct against V and J.

The charges were tried to a jury. Only a small portion of the trial evidence is at issue on appeal, so we limit our discussion to that evidence.

At trial, the state offered into evidence video recordings of V's and J's initial police interviews, which were played in full to the jury. At the end of each video, a Des Moines police detective explains to the complainant what is going to happen next and assures the complainant that he believes them. Specifically, in the video of V's interview, V (then 14 years old) says that she is there to discuss what "happened to [her] when [she] was little." Detective Mathis tells V that, because of her age, he is not going to proceed with interviewing her but will instead arrange for her to be interviewed at a children's hospital:

"DETECTIVE:   I got an idea for you. So when I talk to kids sometimes, which I think you're a kid. You're a young adult; right? But this stuff happened to you, and I want to

make sure that I get all the information in the best possible way that's easiest for you. And I don't want to have to have you keep telling this story; okay?

"[V]: Okay.

"DETECTIVE: But you need to understand that you didn't do anything wrong here. You—you are an innocent person here. You understand that; right?

"[V]: (No audible response.)

"DETECTIVE: So I'm going to schedule an appointment for you to speak with some other nice ladies at the hospital downtown. They can sit down and talk with you about what happened. I'll be there too, but they're going to do all the talking; okay? And it's not going to be today. It's going to be—we'll set it up as soon as we can. Because I believe that something happened to you, and I want to do the right thing. Okay, sweetheart?"

The video of J's interview includes a similar "belief" statement by Mathis. Because J was older (then 18 years old), Mathis took a complete statement from him. In the video, J details extensive sexual abuse by defendant. At the end, Mathis says to J:

"DETECTIVE: *** Your mom said that you really don't feel comfortable talking to another guy about this; right?

"[J]: Yeah.

"DETECTIVE: Is that true?

"[J]: Un-huh.

"DETECTIVE: Okay. We'll just keep it that way then. We'll just keep this between you and me, then. If you feel comfortable talking with me about it, I might ask you some more questions someday. Would you be okay with that?

"[J]: Yeah.

"DETECTIVE: All right. I want you to know that I believe you 100 percent; right?"

Separately, the state called Officer Lane to testify at trial. Lane and Detective Murray are Springfield police officers who together interviewed defendant; Murray primarily asked the questions, while Lane translated. At

one point during the interview, Murray asked defendant a series of questions as to whether V was telling "the truth or a lie" if she said (1) that defendant's penis went inside her vagina, (2) that defendant's penis went inside her anus, and (3) that V touched defendant's penis and stroked it with her hand. Defendant answered that the first two were a lie. As to the third, he admitted that V had touched his penis "very quickly." At trial, a video recording of the interview was played for the jury and, after those three questions and answers, the prosecutor asked Lane whether the purpose of "some of these questions as you go through here" was to "essentially press the defendant on things that you know and things that you may not know in an effort to get him to disclose more." Lane answered, "Yes."

At the close of all evidence, the jury was given instructions, including an instruction that allowed for nonunanimous guilty verdicts. The jury returned guilty verdicts on all charges. The verdicts were unanimous on all counts except Counts 15, 17, and 18, which were nonunanimous.[1] Defendant was convicted on all charges.

## NONUNANIMOUS VERDICTS

Defendant argues that the trial court erred by instructing the jury that it could find him guilty by non-unanimous verdict and then by accepting the jury's verdicts, including but not limited to the three nonunanimous verdicts. Defendant is correct that it was error to give that instruction. *See Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 1394, 1397, 206 L Ed 2d 583 (2020) (holding that, under the Sixth Amendment, a criminal defendant may be convicted of a serious offense only by unanimous verdict). As the state concedes, defendant is therefore entitled to a new trial on Counts 15, 17, and 18—the counts on which the jury returned nonunanimous verdicts—and we reverse and remand his convictions on those counts. The instructional error was harmless, however, as to the counts on which the verdicts were unanimous. *State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020), *cert den*, ___ US ___, 141 S Ct 2837 (2021).

---

[1] The jury returned 10-2 verdicts on Counts 15 and 18. It returned an 11-1 verdict on Count 17.

## ALLEGED VOUCHING

Defendant contends that the trial court plainly erred by admitting into evidence three instances of "vouching" by police officers: (1) Detective Mathis's statements to V during her police interview that "this stuff happened to you" and "I believe that something happened to you and I want to do the right thing," which the jury heard when the video was played at trial; (2) Detective Mathis's statement to J during his police interview that "I believe you 100 percent," which the jury heard when the video was played at trial; and (3) Officer Lane's "yes" answer to the prosecutor's question at trial as to whether some of the questions asked during defendant's police interview were designed to press him "on things that you know and things that you may not know."

Defendant acknowledges that he did not object to any of the foregoing evidence at trial, but he contends that it was "plain error" to admit the challenged statements and testimony, and he urges us to exercise our discretion to correct plain error.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to consider a "plain error." ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Whether an error is "plain" is an issue of law. *State v. Gornick*, 340 Or 160, 167, 130 P3d 780 (2006). If the trial court made a "plain error," it is a matter of discretion whether we will correct it. *Id*.

Applying that standard, we agree with the state that the trial court did not plainly err when it allowed the evidence—that is, when it did not intervene *sua sponte*, despite the lack of objection, to exclude the statements and testimony at issue.

"Vouching" refers to the expression of one's personal opinion about the credibility of a witness. *See State v. Chandler*,

360 Or 323, 330-31, 380 P3d 932 (2016) (discussing history of the "judicially created rule" against vouching). Because credibility determinations are the exclusive province of the factfinder, witnesses are prohibited from expressing a view on whether another witness is "telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983). "[T]he rule against vouching prohibits a witness from making a direct comment, or one that is tantamount to a direct comment, on another witness's credibility." *State v. Black*, 364 Or 579, 585, 437 P3d 1121 (2019). Ultimately, "[w]hether a witness's statement constitutes impermissible vouching is a legal question." *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019). "[T]estimony that constitutes vouching is categorically inadmissible." *Black*, 364 Or at 587.

The rule against vouching also applies to out-of-court statements that are admitted into evidence at trial. *Chandler*, 360 Or at 334. However, an out-of-court statement is "subject to the categorical prohibition against vouching evidence only if the statement is offered for the truth of the credibility opinion that it expresses." *Id.* On plain-error review, it must be "obvious" and "beyond dispute" that the out-of-court statement was offered for the truth of a credibility statement. *State v. Peterson*, 291 Or App 573, 577, 578, 422 P3d 421, *rev den*, 363 Or 815 (2018); *see also State v. Murphy*, 319 Or App 330, 335, 510 P3d 269, 273 (2022) (describing more generally our approach to plain-error vouching arguments).

In this case, we agree with the state that it was not plain error for the court to allow the jury to hear Mathis's statements to V and J during their initial police interviews in Iowa. There is no indication that Mathis's statements were offered for their truth, *i.e.*, as evidence that Mathis in fact believed V's and J's claims of sexual abuse by defendant. Rather, the record suggests that the statements were admitted only as part of the context of V's and J's statements. A reasonable juror also could understand that police officers may say things to alleged victims, alleged perpetrators, or potential witnesses—to make them comfortable and keep them talking—that do not necessarily reflect the officer's subjective beliefs, if any, as to what truly happened.

In *Peterson*, 291 Or App at 575, the defendant was tried on charges relating to his alleged sexual relationship with a 14-year-old girl. A video recording of the girl's police interview was admitted into evidence at trial. *See id.* at 576-77. Over an hour into the interview, a detective asked the girl why she had waited more than a year to report the abuse. *Id.* The girl, who was already "very emotional," became "really upset," explained how she had been struggling with what happened, and then concluded by saying "I'm sorry." *Id.* at 575-76. The detective responded, "That's alright. Thank you for your honesty. And thank you for talking to me. I really appreciate it. I know it's hard to talk to a stranger. So, I really appreciate you coming and talking to me." *Id.* at 576. He then asked if there was anything else that she wanted to tell him. *Id.* On appeal of his convictions, the defendant argued that it was plain error not to strike the detective's statement thanking the girl for her honesty as impermissible vouching. *Id.* at 577. We disagreed, explaining that, rather than being admitted for its truth, the "challenged statement provided relevant context for the victim's emotional reaction to the question of why it took her so long to report the abuse, and was part of a larger statement that may have been intended to console the victim so [the detective] could elicit more information." *Id.* at 578.

Here, similarly, Mathis made reassuring statements directly to V and J,[2] immediately after their reporting to him that they had been sexually abused. There is no indication that the state offered Mathis's statements for their truth. To the contrary, it appears that the statements may have been included simply because they were part of the interview recordings—both recordings were played for the jury in their entirety[3]—and thus part of the context of

―――――――――

[2] At the risk of stating the obvious, this would be an extremely different case if Mathis had testified at trial that he believed V or J.

[3] As part of his vouching argument, defendant suggests that the entire video of V's police interview was irrelevant, given how little V said before Mathis decided to send her to a child forensic interviewer. However, it is precisely because of the lack of any objection that the record is silent as to why the state wanted to show V's interview to the jury. We therefore consider any plausible purpose for which it could have been offered, before we will presume that it was offered for the truth of a credibility statement. Here, without deciding whether, if defendant had objected to its admission, the video could properly have been admitted for these purposes, we note that it is plausible that the state could have shown the

J's and V's statements. Further, the prosecutor did not draw the jury's attention to Mathis's statements or ask any questions about them. *See Chandler*, 360 Or at 335 (noting that the prosecutor did not use the statements "to bolster the victims' credibility or to undermine defendant's"); *Peterson*, 291 Or App at 578 ("[T]he state did not highlight the statement or use the statement to bolster the victim's credibility at trial."). And there were plausible reasons that Mathis might make such statements irrespective of his personal opinion, if any, of V's or J's credibility—such as his wanting to make two teenagers as comfortable as possible in an uncomfortable situation, his wanting to avoid giving V the impression that he was ending her interview because he disbelieved her, and his wanting to try to ensure V's and J's continued cooperation with the investigation.[4]

Because it is not "obvious" and "beyond dispute" that Mathis's out-of-court statements were offered for the truth of the credibility opinions that they expressed, the trial court did not commit "plain" error by failing to intervene *sua sponte* to exclude those statements from evidence. *Id.* at 577, 578.

As for the third alleged vouching statement—Lane's "yes" answer to the prosecutor's question regarding interview tactics used in defendant's interview—the trial court did not plainly err in failing to *sua sponte* exclude that testimony. In answering "yes," Lane confirmed that they had used a tactic of pressing defendant both on "things that [the police] know and things that [the police] may not know." Lane did not purport to identify what the police knew, as distinct from what they did not know, let alone do so in a way that would communicate to the jury that the police "believed" something in particular that V had said and

---

video to help the jury understand how the investigation evolved, or to let the jury see V's demeanor in her initial police interview, even if she said little. We disagree that the only possible reason to show the video was to convey to the jury that Mathis believed V.

[4] Indeed, another statement that Mathis made contemporaneously to J illustrates the point. When Mathis told J that he would keep what J told him "between you and me," it seems likely—given that Mathis was a police detective conducting a criminal investigation of serious crimes—that Mathis was trying to reassure J and keep him open to future questioning, rather than actually believing that he would never tell anyone what J had reported in his police interview.

therefore "knew" that it had happened. Lane's answer was simply too vague to constitute impermissible vouching for anyone's credibility, particularly on plain-error review. We therefore need not address the state's other arguments as to why it was not plain error to allow that testimony.

We therefore conclude that the trial court did not plainly err in admitting any of the alleged vouching statements or testimony.

Convictions on Counts 15, 17, and 18 reversed and remanded; remanded for resentencing; otherwise affirmed.