Submitted January 28, 2015, portion of the judgment requiring defendant to pay attorney fees reversed, otherwise affirmed June 15, petition for review denied November 29, 2016 (360 Or 697)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAVIER VAGE, JR.;
aka Javier Maldonado, Jr.;
aka Javier Vega, Jr.,
*Defendant-Appellant.*

Marion County Circuit Court
12C45811; A153712

379 P3d 645

Peter Gartlan, Chief Defender, and Laura E. Coffin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

In this criminal appeal, defendant challenges his convictions for coercion (Count 1) and fourth-degree assault constituting domestic violence (Counts 2 and 3). Defendant raises two assignments of error, neither of which was preserved below. In his first assignment, defendant contends that the trial court erred by failing to exclude, *sua sponte*, vouching testimony of a state's witness. In his second assignment, defendant argues that the court erred by ordering him to pay court-appointed attorney fees without first establishing his ability to pay them. We conclude that defendant's first assignment of error does not qualify for plain error review. As to defendant's second assignment of error, we agree that the trial court plainly erred by requiring defendant to pay court-appointed attorney fees, and we exercise our discretion to correct the error. Accordingly, we reverse the portion of the judgment requiring defendant to pay attorney fees, but otherwise affirm.

In August 2012, police received reports that defendant had, on multiple occasions, assaulted his girlfriend. The victim told Officer Gould that, during the first incident, defendant had punched her in the head with a closed fist, causing her to have headaches for two weeks. She also described a second incident where defendant punched her in the face, causing her nose to "gush blood," and a third incident where defendant "came up behind her and grabbed her by the shoulders and began shaking her and holding her" for about two minutes. A grand jury indicted defendant for one count of coercion, three counts of fourth-degree assault constituting domestic violence, and one count of failure to report as a sex offender.

At defendant's trial, the jury heard testimony from various witnesses, including Gould and the victim (who by that time had recanted her earlier statements and testified in favor of defendant). During the victim's testimony, she denied that defendant had caused her injuries, instead attributing her injuries to falling down on her own, to the fire department's efforts to assist her, or to another perpetrator, "Kirk Clark." When asked why she had told police

that defendant had caused her injuries,[1] the victim gave varying answers, including that (1) she had "flashbacks" that caused her to believe that it had been defendant; (2) she was confused about what had happened; and (3) she is "90 percent blind."[2] The victim did not claim to have lied to the police; rather, her testimony suggested that, because of her physical and cognitive limitations, she had been confused or mistaken about how she had sustained her injuries.

To address the victim's trial testimony, which, as noted, was inconsistent with her earlier statements to police, the state recalled Gould to the stand. He was asked once more about the statements the victim made to him during his investigation:

"[Prosecutor]: Did she ever mention anything about having caused the injury herself? Ever on that day mention having caused the injury herself?

"[Gould]: No.

"[Prosecutor]: Or falling in her van and hitting her nose on the door?

"[Officer Gould]: No. She was very clear that [defendant] had punched her. *I didn't get the impression at all, based on a conversation, that she was not being truthful with me. She didn't—I mean, part of my job as an officer is to show up and gauge somebody's honesty. I don't recall when I was talking with her that day that she was being hesitant, that she was being deceptive, that she wasn't changing her story. She was giving the same concise answers when I asked her details. So, you know, based on how she was responding to my questions, I didn't get any indication that she was lying to me about what happened.*"

(Emphasis added.)

---

[1] The victim had also identified defendant as her abuser in front of the grand jury and in her victim impact statement, though, at trial, she claimed the statement had been written by someone else.

[2] When asked by defense counsel to elaborate on her mental and physical limitations, as well as their effect on her recollection of what happened regarding her injuries, the victim stated:

"I cannot see. I honestly, because of all my abuse issues, I put two and two together and I feel so bad, so bad, because it wasn't him. * * * All he did was take care of me."

Defendant did not object to the testimony high-lighted above, move to strike the testimony, or seek a curative instruction. Rather, on recross-examination, defendant's counsel directly inquired as follows:

"[Defense Counsel]: And when you talked to [the victim], it's your testimony that she seemed to be honest, she didn't appear to be lying?

"[Officer Gould]: Correct."

The jury found defendant guilty of one count of coercion and two counts of fourth-degree assault. At sentencing, the trial court ordered defendant to pay a $200 fine and $820 in attorney fees, as requested by the state. Defendant did not object to the imposition of attorney fees, nor did he inform the court that he was unable to pay those fees. The court did not make any findings regarding defendant's financial circumstances, though the trial record suggests that defendant was homeless and that he slept in the victim's van, which he sometimes parked in the parking lot of a temporary employment agency in Salem.[3]

We first address defendant's claim that the trial court plainly erred by failing to strike *sua sponte* Gould's statements because they constituted impermissible vouching for the victim's credibility. Defendant acknowledges that he did not object to that testimony at trial, but urges us to exercise our discretion to correct what he asserts was a plain error, apparent on the face of the record. According to defendant, the error was apparent because Gould's statements directly commented on the victim's credibility, which Oregon courts have repeatedly held is improper. *See, e.g.,* *State v. Keller*, 315 Or 273, 285, 844 P2d 195 (1993) ("Once again, we repeat that a witness may not testify about the credibility of another witness."). He contends that the record contains no indication that defendant had a tactical reason for not objecting to the testimony. Furthermore, defendant argues that the error was prejudicial because "the verdicts hinged entirely on a credibility determination: whether [the victim] was telling the truth during the interview with

---

[3] According to defendant, his parole officer instructed him to register his address at that location.

Gould, or whether defendant and [the victim] were telling the truth at trial."

The state, in turn, argues that Gould's comment does not qualify for plain error review for two reasons. First, the state asserts that "the trial court had no reason to anticipate the challenged testimony because the prosecutor's question did not invite Officer Gould to comment on the victim's credibility." The state points out that the trial court never affirmatively admitted the testimony, nor was it presented with the task of ruling on its admissibility because there was no objection. The state claims that, under such circumstances, Oregon courts have "not provided guidance [on] how to determine when, during a witness's testimony, it becomes 'necessary' to strike a particular statement that it has been unable to exclude." We understand the state's first argument to be that the error does not qualify for plain error review because it is unclear, as a matter of law, whether (or how) a trial court is required to strike *sua sponte* vouching testimony that was not elicited.

Second, the state argues that, because defendant's counsel asked Gould to repeat, in a more direct way, his earlier comments about the victim's credibility, defendant may not have intended to object to Gould's initial vouching testimony and may not have wished to have the court intervene at that time. That is, the state contends that the error does not qualify for plain error review because we would be required to choose between competing inferences to conclude that the trial court erred. Moreover, the state claims that, even if the error does qualify for plain error review, we should not exercise our discretion to correct it because the error is harmless and because correcting it would undermine our preservation principles.

We begin by addressing whether Gould's testimony constituted the type of impermissible vouching that would have been inadmissible had it drawn an objection. As we have made clear, under Oregon law, "testimony commenting on the credibility of a witness is impermissible vouching and plain error." *State v. Salas-Juarez*, 264 Or App 57, 63, 329 P3d 805, *rev den*, 356 Or 575 (2014). That rule applies when, as here, the witness "is testifying about the credibility of the

other witness in relation to statements made by the latter on some other occasion." *State v. Wilson*, 266 Or App 481, 489, 337 P3d 990 (2014), *rev den*, 356 Or 837 (2015) (internal quotation marks omitted). In this case, we conclude that the challenged testimony constituted impermissible vouching, given that Gould's comments explicitly indicated that he believed that the victim, who testified at trial, had been honest when she had accused defendant of assaulting her.

However, because defendant's challenge to that error is unpreserved, we must, as a preliminary matter, determine whether the error meets the criteria for plain error review. Pursuant to ORAP 5.45, we may only "review an unpreserved claim of error if that error is 'plain.'" *State v. Corkill*, 262 Or App 543, 551, 325 P3d 796, *rev den*, 355 Or 751 (2014). An error is "plain" only if (1) "the error is one of law," (2) the legal error is "obvious, not reasonably in dispute," and (3) "the error appears on the face of the record," such that we "need not go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable." *Id.* (internal quotation marks omitted). To determine whether all three criteria have been met, "it is critical to identify the exact nature of the error that the trial court purportedly committed." *Id.* As we explained in *Corkill*:

> "When * * * the claimed 'plain error' is associated with a trial court not having *sua sponte* interrupted a line of questioning (or not having excluded the resulting evidence *sua sponte*), the existence of any error does not depend solely on whether—as an abstract matter—the lawyer's questions or the elicited answers would have been inadmissible if they had been objected to. Rather, any 'plain error' must relate to the trial court having not taken affirmative steps to intervene in the parties' litigation."

*Id.*

In this case, as both parties acknowledge, the specific issue on appeal is whether it was plain error for the court not to strike Gould's unelicited testimony *sua sponte*. That is, we must determine whether it was beyond dispute that the court had a duty to prevent that testimony from reaching the jury. *See id.* at 552. For the following reason, we conclude that such a duty was not beyond dispute.

In particular, we are persuaded by the state's argument that the challenged testimony does not qualify for plain error review because, to decide the issue, we would have to choose between competing inferences about whether defendant made a conscious decision not to object to Gould's testimony.[4] It is well established that an "error does not qualify as plain error if the record contains a competing inference that the party may have had a strategic purpose for not objecting," and that competing inference is plausible. *Salas-Juarez*, 264 Or App at 64 (relying on *State v. Gornick*, 340 Or 160, 169-70, 130 P3d 780 (2006)).

Here, it is plausible that defendant made a conscious decision not to object to Gould's testimony. Contrary to defendant's assertion on appeal, this case did not turn on "whether [the victim] was telling the truth during the interview with Gould, or whether defendant and [the victim] were telling the truth at trial." Under defendant's theory of defense,[5] those two issues did not contradict one another. That is so because, at trial, the victim did not claim that she had lied or made up the accusations against defendant during her interview with Gould; rather, she attempted to explain why she had honestly, though mistakenly, accused defendant at that point in time. Similarly, defendant never accused the victim of having lied to Gould; instead, he relied heavily on her testimony about being confused or mistaken about how she was injured. Thus, the case turned on whether the victim was telling the truth *at trial* about having been previously mistaken. As defendant pointed out in closing, the victim's trial testimony—and by extension, her credibility—was particularly significant to his defense, given that there were no eyewitnesses and the victim now claimed to have been mistaken about how she was injured.

---

[4] Because that issue is dispositive, we do not address the state's alternative argument regarding the clarity of our case law as applied to nonelicited vouching testimony. *See State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (only if all three plain error requirements are met can we consider whether to exercise our discretion to correct the error).

[5] Defendant's theory of defense, as best we can tell, was that there was too much uncertainty about what happened to the victim to hold defendant accountable for her injuries. Consistent with that theory, defendant sought to establish that the victim had been confused or mistaken when she accused defendant of causing her injuries, relying on the victim's trial testimony about her cognitive and physical limitations.

Thus, it is plausible that defendant welcomed Gould's vouching testimony, at least to the extent that it was consistent with his theory of defense and tended to support the victim's veracity in general.

That conclusion is further supported by the fact that, on further cross-examination, defendant asked Gould to confirm the challenged vouching testimony. Once again, defense counsel asked Gould, "And when you talked to [the victim], it's your testimony that she seemed to be honest, she didn't appear to be lying?" That question, combined with defendant's initial failure to object and his theory of defense, suggests that defendant may have had a strategic reason for not objecting to Gould's vouching comments. Therefore, because it is plausible that defendant purposefully chose not to object to the challenged testimony, we cannot conclude that it was plain error for the court not to strike Gould's testimony *sua sponte*. *See Salas-Juarez*, 264 Or App at 66 (where the witness's vouching testimony was consistent with defendant's theory of defense, the trial court was not obligated to *sua sponte* exclude the testimony, and thus, it was not plain error for the court to fail to do so).

We next turn to defendant's claim that the court erred by ordering him to pay attorney fees when the record is legally insufficient to demonstrate that defendant had the ability to pay. Although defendant acknowledges that he failed to object to the imposition of attorney fees, he asks that we correct what he asserts was a plain error, because it is well established that a court may only impose attorney fees if the record establishes that the defendant "is or may be able" to pay them. ORS 151.505(3); ORS 161.665(4).

The state responds that defendant has not established a basis for plain error review. It contends that, although the asserted error is legal in nature, it "neither appears on the face of the record nor is free from reasonable dispute." The state claims that there is evidence in the record to establish that "defendant was employable and had earned wages in the recent past," and, therefore, it is plausible that the court's decision to impose attorney fees was based on a valid determination of his ability to pay. To support that claim, the state points to defendant's testimony

about how he parked his van in front of a temporary employment agency, where he sometimes stood in line to "get ready to go to work." Furthermore, the state claims that, even if the error qualifies for plain error review, we should not exercise our discretion to review it because the state's interest in collecting the $820 in fees is cognizable.

A trial court plainly errs when it orders a defendant to pay court-appointed attorney fees and the record does not include legally "sufficient evidence to support a finding that defendant was or might be able to pay the court-appointed attorney fees." *State v. Mejia-Espinoza*, 267 Or App 682, 684, 341 P3d 180 (2014), *rev den*, 357 Or 164 (2015). Ultimately, the "state bears the burden of proving that [the] requirement has been satisfied." *State v. Coverstone*, 260 Or App 714, 715, 320 P3d 670 (2014).

In this case, the record is legally insufficient to demonstrate that defendant was or may have been able to pay the fees imposed by the court. Contrary to the state's assertions, the record does not support a reasonable inference that defendant was employable or that he had worked in the recent past. Although there was some testimony that he had sought work through the temporary employment agency, the court had no information about whether defendant was actually able to secure employment through that agency, how frequently he was able to work, or how much he earned. *See Mejia-Espinoza*, 267 Or App at 684 (evidence that defendant had worked in the past as a field worker and firefighter was insufficient to support a finding that defendant had the ability to pay attorney fees because the record contained no information about defendant's historic earnings or his future employability); *see also State v. Tiscornia*, 272 Or App 753, 755, 358 P3d 326 (2015) (evidence that defendant had worked cleaning houses for a person "a couple of years ago" was legally insufficient to support an inference that defendant was or could have been able to pay attorney fees). Furthermore, the state did not introduce any evidence at the sentencing hearing to support a finding that defendant otherwise had assets to pay the fees or that he would receive income during his incarceration that would allow him to pay those fees. *See Mejia-Espinoza*, 267 Or App at 684 (court plainly erred by imposing court-appointed attorney

fees where the record also did not contain evidence that defendant had sufficient assets or expected to earn income during his incarceration); *see also State v. Belen*, 277 Or App 47, 58, 369 P3d 438 (2016) (same). Thus, because the record was silent as to defendant's ability to pay court-appointed attorney fees, the court plainly erred by imposing such fees.

Furthermore, we conclude it is appropriate to exercise our discretion to correct the error. *Mejia-Espinoza*, 267 Or App at 684 (When determining whether to exercise our discretion, "we consider, among other things, the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way." (Internal quotation marks omitted.)). In this case, the amount of attorney fees imposed on defendant ($820), his apparent lack of financial resources, and his six-year prison sentence indicate that defendant would be significantly burdened by the imposition of fees. *See Coverstone*, 260 Or App at 717 (weighing the gravity of the trial court's error as an important factor in the exercise of discretion to correct the error); *see also State v. Fleet*, 270 Or App 246, 247, 347 P3d 345 (2015) (exercising discretion to correct erroneous imposition of $980 in attorney fees, in light of the amount of the fees, the defendant's 60-month prison term, and the lack of evidence indicating that defendant would be able to pay fees). Additionally, for the reasons stated above, "this is not a case in which the trial court could have made the necessary findings regarding ability to pay if the issue had been brought to its attention." *Mejia-Espinoza*, 267 Or App at 685.

Portion of the judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.