Submitted September 28, 2015, affirmed November 30, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERICK YINARO MACIAS,
aka Erick Yinaromacias,
aka Yinaro Erick Macias,
*Defendant-Appellant.*

Multnomah County Circuit Court
130331314; A156123

386 P3d 186

Peter Gartlan, Chief Defender, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

**SERCOMBE, P. J.**

In this criminal case, defendant appeals a judgment of conviction for fourth-degree assault. ORS 163.160. On appeal, he raises three assignments of error. We reject without discussion defendant's second and third assignments of error, in which he contends that the trial court erred in instructing the jury that it could find him guilty by a nonunanimous verdict and by accepting a nonunanimous verdict. *See State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 415 (2008), *cert den*, 558 US 815 (2009). We write to address defendant's first assignment of error, in which he argues that the trial court plainly erred in failing to *sua sponte* "exclude * * * or instruct the jury to disregard" a police officer's testimony that, according to defendant, constituted a comment on defendant's credibility. As explained below, we reject defendant's contention and, accordingly, affirm the judgment of the trial court.

On March 11, 2013, the Gresham police received a call reporting that someone had been robbed at knife point at the 7-Eleven store on the corner of Hogan and Division in Gresham. When officers responded to the call, the only people at the 7-Eleven were the victim, Gurpreet Singh, and Gurcharan Singh, both of whom worked at the store. The victim and Gurcharan reported that the victim had been robbed, and that Gurcharan had witnessed what happened. Based on the information the two men provided, officers arrested defendant, who was ultimately charged with first-degree robbery, unlawful use of a weapon, fourth-degree assault, and harassment.

At trial, the victim testified that, prior to the incident in question, defendant often came to the store to return cans. Defendant had also behaved in a way that the victim found scary and threatening. Specifically, according to the victim, defendant would come up to the 7-Eleven window and press his hands against the glass and "then laugh loud."

On the day in question, Gurcharan arrived at the store around 9:00 p.m. and saw defendant sitting on top of a Redbox DVD kiosk outside. He told the victim, who was working in the store, what he had seen. The victim testified

that he went outside and told defendant several times to get down and to leave and that, eventually, defendant did so.

According to the victim, later that evening, he went out to clean the parking lot of the store and again found defendant on top of the kiosk. He told defendant to come down and defendant jumped down, grabbing the victim by the collar and scratching him in the process. The victim testified that defendant let go of his collar, punched him on the side, and then pulled out a knife and said he wanted money. The victim put his hands up and told defendant he did not have any money. Gurcharan then came outside. He testified that he saw defendant with the knife, and screamed at defendant, "Don't do that." Defendant then ran away and, shortly thereafter, the victim called 9-1-1 to report the incident.

Defendant, who has been diagnosed with schizophrenia, testified that he had climbed on top of the kiosk on the day in question because he was experiencing delusions. He testified that, the first time he climbed on the kiosk, the victim pulled him down and went back in the store. He also testified that he went back to the kiosk and got back on it that evening. However, defendant denied having had a second interaction with the victim and testified that he did not threaten the victim, demand money, or otherwise try to rob the victim. He explained that the victim was his neighbor and, according to both defendant and his girlfriend, they did not have a good relationship.

Webb, one of the officers who responded to the robbery report, testified at trial regarding the investigation and his interview with defendant after defendant was arrested. The state played a portion of Webb's recorded interview of defendant for the jury, noting beforehand that it would play the recording and then talk with the officer "a little bit about what [he was] thinking, what was going on in the process." After playing the recording, the state asked Webb about his interview style and Webb explained that his questioning was intended to cause defendant to be honest about the incident:

"Q.   And *** it seems like in the interview, you know, you are trying to give him a little bit of a, 'Hey, maybe it

was just a fight or.' And what's the purpose there in terms of * * * your interview style to talk to somebody?

"A.    Uhm, I'm trying to just get him to tell me honestly what happened instead of worrying about, you know, who it was. That was a big * * * thing, was [defendant] wanted to know who was reporting this. I just wanted him to be honest with me.

"Q.    Okay. And * * * when you asked him about the knives, initially he says he doesn't own any. And then you are pretty surprised by that; fair to say?

"A.    Yeah.

"Q.    And so you press a little bit further; is that right?

"A.    Mm-hmm.

"Q.    And * * * he explains that he has got some kitchen knives?

"A.    Yes.

"Q.    And * * * so you follow up again in terms of * * * additional knives; is that right?

"A.    Mm-hmm.

"Q.    And that's just kind of—I mean, you don't have any particularized knowledge. He didn't have a knife when you took him into custody? * * *

"A.    Yeah. It seemed odd to me that all you would have is kitchen knives. It seems like a lot of people have utility knives or, you know, small pocket knives for utility reasons.

"* * * * *

"Q.    Okay. I'm not going to play it, but essentially, you kind of intimate that you are going to be going to his house?

"A.    Mm-hmm.

"Q.    And what's the purpose of that * * * I guess you have at that point, right—

"A.    Mm-hmm.

"Q.    Could have applied for a warrant on his house?

"A.    Yes.

"Q.    Okay. And so—in terms of intimating that—what's the purpose of that in talking to him?

"A.   Because if he thinks that I'm going to go and, you know, look in his house, I'm going to find out that he's being untruthful. Because everybody has something other than kitchen knives for the most part in every house that I've been into. But saying that to him would, you know, encourage honesty because his facts are going to be checked.

"Q.   Okay. And did it, in fact, work? I mean, was that something—

"A.   It did. The first time I asked him, I specifically asked him, 'You don't have any other kinds of knives or daggers?' And then when I came back, I asked him, 'You know, are you sure you don't have any knives or daggers or anything like that?' And he came out that he has a sword and a dagger and I'm not sure if he had any other knives. But he specifically stated that he had a sword and a dagger."

On cross-examination, defendant asked Webb additional questions regarding his interview techniques:

"Q.   How many hours *** of interrogation training have you received?

"A.   I don't know the hours off the top of my head, but we do have, you know, at least a four-hour class or a block of class on asking people questions.

"Q.   Is one of the techniques to give them sort of an easy way out, ways out, give then sort of, 'Well, maybe you did this in self defense.' Give them like—to try and help then rationalize why they did the crime that you are saying they did?

"A.   Sure.

"Q.   Did you do that with [defendant]?

"A.   Uhm—I mean, I provided that as an option for him maybe. *I didn't feel like he was being honest with me,* so I was trying to figure out what, if any, reason he had to do this.

"Q.   Okay. And specifically, do you remember saying, 'So if you don't care about getting arrested, why wouldn't you defend yourself?'

"A.   Mm-hmm.

"Q.   Do you remember that? So you are giving him the option of maybe he was doing this in self defense?

"A. Yeah. I was trying to get [defendant] to say that he produced a knife and said these things to [the victim]. So I, you know, created a scenario for him in which he had an out, a reason for why he did something.

"Q. Did he take your out?

"A. He didn't."

(Emphasis added.)

Ultimately, the jury found defendant guilty of fourth-degree assault and acquitted him on the charges of first-degree robbery, unlawful use of a weapon, and harassment.

As noted, on appeal, defendant asserts that the trial court erred in "permitting Officer Webb to testify that he believed defendant was not being honest." That is, defendant challenges the admission of Webb's statement, in response to defendant's questioning on cross-examination, that Webb "didn't feel like [defendant] was being honest with" him. In defendant's view, that testimony constituted an improper comment on defendant's credibility.

In Oregon, the rule is that "a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983); *see State v. Chandler*, 360 Or 323, 330, 380 P3d 932 (2016) ("This court has long held that one witness may not comment on the credibility of another witness.").

> "That rule applies 'whether the witness is testifying about the credibility of the other witness in relation to the latter's testimony at trial or is testifying about the credibility of the other witness in relation to the statements made by the latter on some other occasion or for some reason unrelated to the current litigation.'"

*State v. Wilson*, 266 Or App 481, 489, 337 P3d 990 (2014), *rev den*, 356 Or 837 (2015) (quoting *State v. Keller*, 315 Or 273, 285, 844 P3d 195 (1993)); *see Chandler*, 360 Or at 331 ("This court has * * * made clear that the rule applies to credibility opinions and statements that a witness made either at trial or on some other occasion."); *see also id.* at 330 ("The rule prohibiting vouching testimony * * * serves the policy

goals of ensuring that the jury remains the sole arbiter of witness credibility and that the jury's role in assessing witness credibility is not usurped by another witness's opinion testimony."). As we noted in *Wilson*,

> "[e]xamples of testimony that is impermissible as a direct opinion on the honesty or credibility of another witness include (1) testimony by the victim's mother that she never doubted [the victim] for a second, *State v. Vargas-Samado*, 223 Or App 15, 17, 195 P3d 464 (2008); (2) testimony that there is no lying going on about what [the complainant is] telling us in this evaluation, *State v. Hollywood*, 250 Or App 675, 677, 282 P3d 944 (2012); and (3) testimony that the witness didn't think that [the defendant] was being very honest and upfront, *State v. Lowell*, 249 Or App 364, 366, 277 P3d 588, *rev den*, 352 Or 378 (2012)."

266 Or App at 489-90 (second and fourth brackets in original; internal quotation marks omitted).

In this case, defendant acknowledges that he failed to preserve his contention that Webb's statement on cross-examination constituted an improper comment on defendant's credibility. However, he asserts that the trial court plainly erred in "allowing" the testimony. *See* ORAP 5.45(1) (we consider only claims of error that are "preserved in the lower court * * * provided that the appellate court may consider an error of law apparent on the record"). In considering an unpreserved claim of error, we first determine whether the trial court plainly erred. An error is "plain"

> "if (1) the error is one of law, (2) the error is obvious, not reasonably in dispute, and (3) the error appears on the face of the record, so that we need not go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable."

*State v. Corkill*, 262 Or App 543, 551, 325 P3d 796, *rev den*, 355 Or 751 (2014) (internal quotation marks omitted). If we determine that the trial court plainly erred, we must consider whether to exercise our discretion to correct the error. In making that determination, we consider, among other things,

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the

particular case; how the error came to the court's atten-
tion; and whether the policies behind the rule requiring
preservation of error have been served in another way, *i.e.*,
whether the trial court was, in some manner, presented
with both sides of the issue and given an opportunity to
correct any error."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823
P2d 956 (1991); *see State v. Vanornum*, 354 Or 614, 630,
317 P3d 889 (2013) (exercise of discretion in determining
whether to correct plain error "entails making a prudential
call that takes into account an array of considerations, such
as the competing interests of the parties, the nature of the
case, the gravity of the error, and the ends of justice in the
particular case").

In response to defendant's assignment of error, the
state contends, first, that the trial court did not plainly err
because "it is not clear on this record that Webb's statement
constitutes" an impermissible comment on defendant's cred-
ibility. In the state's view, in context, it is not clear that Webb
was commenting on defendant's credibility:

> "Webb's testimony explained why he continued to press
> defendant [during the interview] after defendant denied
> assaulting the victim. Webb explained that defendant's
> answers did not always make sense, and that his answers
> changed during the interview. Defense counsel's questions
> invited Webb to elaborate further as to why he asked defen-
> dant certain questions and why he asked defendant if he
> had acted in self-defense[.]
>
> "* * * * *
>
> "Although Webb did testify that he did not 'feel like
> [defendant] was being honest' with him during that partic-
> ular point in the interview, his testimony was made in the
> context of exploring his interview style, and in response to
> defendant's question as to whether Webb had tried to give
> defendant an 'easy' way to justify the assault."

(Third brackets in original; citation omitted.) *See Chandler*,
360 Or at 335-36 (trial court did not err in allowing admis-
sion of statements by an officer in a recorded interview that
defendant was lying and the victims were telling the truth,
where those statements were "offered to provide relevant

context for the statements that defendant made throughout the interview"). The state also contends that, in any event, the asserted error does not qualify for plain error review because, to decide the issue, we would have to choose between competing inferences about whether defendant made a conscious decision not to object to the testimony.

Even assuming, as defendant argues, that Webb's statement constitutes an improper comment on defendant's credibility, we agree with the state that the trial court's failure to exclude it does not qualify for plain error review. As we explained in *Corkill*, when the asserted plain error, with respect to a comment on credibility,

> "is associated with the trial court not having *sua sponte* interrupted a line of questioning (or not having excluded the resulting evidence *sua sponte*), the existence of any error does not depend solely on whether—as an abstract matter—the lawyer's questions or the elicited answers would have been inadmissible if they had been objected to. Rather, any 'plain error' must relate to the trial court having not taken affirmative steps to intervene in the parties' litigation."

262 Or App at 551. Thus, the issue we must address is whether, in this case, it was plain error for the court not to interrupt the proceedings once Webb answered defendant's question on cross-examination, and, *sua sponte*, strike the testimony in question. *See State v. Vage*, 278 Or App 771, 776, 379 P3d 645 (2016) (on plain error review of an asserted comment on the credibility of a witness, "we must determine whether it was beyond dispute that the court had a duty to prevent [the] testimony from reaching the jury"). We agree with the state that the trial court did not plainly err in failing to intervene and strike the testimony in this case given that one can plausibly infer from the record that defense counsel may have had a strategic purpose in not objecting.

"It is well established that an error does not qualify as plain error if the record contains a competing inference that the party may have had a strategic purpose for not objecting and that competing inference is plausible." *Id.* at 777 (internal quotation marks omitted); *see State v. Gornick*, 340 Or 160, 169-70, 130 P3d 780 (2006) (no plain

error if the evidence is subject to a competing inference that the defendant had a strategic purpose in not objecting to the evidence); *State v. Lovern,* 234 Or App 502, 512, 228 P3d 688 (2010) (for plain error analysis, competing inferences must be plausible); *see also Wilson,* 266 Or App at 493-94 (concluding that failure to *sua sponte* strike testimony was not plain error, observing that "there was a reasonable inference that the trial court could have drawn that defense counsel had a plausible reason not to object" to the question so that "the court's obligation to intervene in the examination of the witness was not clear").

Here, given the context of the testimony in question, it is plausible that defendant made a conscious decision not to object to it. First, we observe that, during the course of the trial in this case, defendant objected to a number of other statements by witnesses as impermissible comments on credibility, but did not do so with respect to Webb's testimony. Furthermore, the statement in question arose in the context of defendant's cross-examination of Webb regarding the techniques Webb used when interviewing defendant. Defendant then used Webb's testimony in support of his theory that the police had wrongly believed the victim in this case. He pointed out that there were "[t]wo narratives"— that of the victim and that of defendant—and "the police show up and they make a decision which side do they want to believe." Defendant noted that Webb's interviews of the victim had been insufficient, and pointed out that it was strange and "concerning" that, in spite of Webb's interviews, he did not know that the victim and defendant were neighbors, nor did he "know anything about the long relationship between these two individuals." Defendant also emphasized that, although defendant had been offered "a way out" by Webb during the interview (that he had acted in self-defense during his interaction with the victim), defendant did not take it because the incident described by the victim had not happened. In other words, as the state correctly observes, the statement in question supported defendant's position that "the victim was lying about what had happened and the police wrongly believed the victim, and thus 'interrogated' defendant under the assumption that he was guilty." Under all the circumstances, there is a plausible inference

that defendant made an intentional strategic choice to not interrupt his own cross-examination and ask the court to strike Webb's statement that he believed defendant was not being honest. *See State v. Hanson*, 280 Or App 196, 204, 380 P3d 1136 (2016) (plausible inference that the defendant in a sexual abuse case chose not to object to vouching testimony "where the testimony was (1) not directly related to victim's allegations of sexual abuse, but, instead, was aimed at a collateral issue; (2) not responsive to the question asked by the state; (3) from the victim's mother rather being the 'kind of expert vouching testimony' that most often has prompted us to reverse a criminal conviction because the trial court plainly should have stricken the testimony *sua sponte*; and (4) intentionally brought up and used by defendant on cross-examination").

Given the competing plausible inferences in this case, we agree with the state that the trial court did not plainly err in failing to intervene in defendant's cross-examination of the witness and strike the testimony *sua sponte*. Accordingly, we reject defendant's assignment of error.

Affirmed.