132 April 9, 2026 No. 17

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOSHUA DANIEL HUTCHINGS,
*Petitioner on Review.*

(CC 20CR07446) (CA A179185) (SC S072024)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 27, 2026.

Stacy Du Clos, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Ryan Kahn, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Dan Rayfield, Attorney General, and Paul L. Smith, Interim Solicitor General.

BUSHONG, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

* Appeal from Multnomah County Circuit Court, Heidi H. Moawad, Judge. 340 Or App 208, 570 P3d 267 (2025).

**BUSHONG, J.**

In this criminal case, we are asked to decide whether the prosecutor's elicitation of vouching testimony without objection warrants reversal of defendant's conviction for unlawful use of a weapon. The Court of Appeals affirmed the conviction, concluding that the admission of the testimony was not grounds for reversal as a "plain error," because it was plausible that defendant had, for strategic reasons, chosen not to object to that testimony. *State v. Hutchings*, 340 Or App 208, 570 P3d 267 (2025). We allowed review on defendant's petition to address how the possibility that counsel had strategic reasons for not objecting to inadmissible vouching testimony affects the analysis on plain-error review. Assuming without deciding that the testimony here violated the categorical prohibition on vouching, we conclude that the error was plain, but the Court of Appeals did not abuse its discretion in declining to reverse defendant's conviction based on that error.

In general, an appellate court "may, in its discretion, consider a plain error," that is, an error that was not preserved for appellate review by a timely objection. ORAP 5.45(1). An error constitutes a plain error if it is (1) an error of law, (2) obvious and not reasonably in dispute, and (3) apparent on the record. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (citing *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990)). But, as we have explained, determining that an error is plain "does not mean that [the] defendant is entitled to a reversal." *State v. Wiltse*, 373 Or 1, 4, 559 P3d 380 (2024).[1] Appellate courts have discretion to reverse a conviction based on a plain error in some cases. Whether an appellate court should exercise that discretion depends on other considerations, "including,

_____

[1] In *Wiltse*, we also stated that a plain error "is not necessarily a reversible error." 343 Or at 4-5. We used the word "reversible" in that context to mean "eligible for reversal." Under Article VII (Amended), section 3, of the Oregon Constitution, "an appellate court may not reverse a criminal defendant's conviction based on an error—whether preserved or unpreserved—that is harmless." *State v. Ortiz*, 372 Or 658, 671, 554 P3d 796 (2024). Thus, a plain error does not provide legal grounds for reversal—that is, it is not legally *reversible*—if it is harmless under the constitutional standard. An error is considered harmless for purposes of that standard if "there is little likelihood that the error affected the jury's verdict." *Id.* at 671 (citing *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)).

but not limited to, the considerations that this court identified in *Ailes*." *Id.*

The dispute in this case centers on the possibility that defendant, consistent with his trial strategy, made a "strategic choice" not to object to vouching testimony elicited by the prosecutor. We have indicated in another context that the possibility that a defendant "made a strategic choice not to object" is a factor that is relevant to the analysis. *Wiltse*, 373 Or at 11 (citing *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007)). How that possibility affects the analysis on plain-error review is the main issue in dispute here.

The state contends—and the Court of Appeals concluded—that the possibility that defendant made a strategic choice not to object to the vouching testimony means that the error was not "plain," and, therefore, an appellate court may not consider it. Defendant contends that the possibility that he made a strategic choice not to object is a factor to consider in determining whether to reverse his conviction based on the error, but it does not determine whether the error is reviewable as plain error. Defendant argues that allowing vouching testimony was plain error, because the prosecutor's elicitation of that testimony was an obvious error of law that is apparent from the record and not reasonably in dispute. Defendant further contends that his conviction should be reversed based on that error, because the competing interests of the parties and the gravity of the error favor a reversal.

As we will explain, we agree with defendant that the elicitation of vouching testimony is generally reviewable on appeal as plain error even if the defendant may have made a strategic choice not to object to that testimony. We further conclude, however, that the Court of Appeals did not abuse its discretion in declining to reverse defendant's conviction based on that error.

## HISTORICAL AND PROCEDURAL FACTS

The facts relevant to our review are not in dispute and are taken from the record and the Court of Appeals' decision. Defendant lived in the same apartment complex as the alleged victim, KC, though they did not know each

other. On the day in question, defendant and KC got into an argument. Defendant had parked his car in KC's assigned parking spot, and KC had parked his vehicle in a way that blocked defendant's car. Defendant confronted KC about blocking his car, resulting in an argument. According to KC, defendant pulled out a gun during the argument, pointed it at KC, and threatened to shoot him. Defendant eventually returned to his apartment, and KC called the police.

Gresham Police Officer Zachary Smelser responded, interviewed KC, and then met with defendant outside his apartment. Smelser arrested defendant and informed him of his *Miranda* rights, and defendant agreed to talk to Smelser. During that discussion, defendant acknowledged that he had gotten into an argument with KC but denied brandishing a gun. Defendant acknowledged that he *owned* a Glock-type gun that matched the description that KC had offered, but defendant claimed that his guns were locked in a safe in his apartment at the time of the argument. Later, police executed a search warrant and found a gun in defendant's safe that matched the description that KC had offered.

Defendant was indicted and went to trial on a charge of unlawful use of a weapon involving the threatened use of a firearm. Smelser testified at trial about his discussions with KC and defendant. On cross-examination, Smelser acknowledged that he did not have any kind of "special training" to help him judge someone's credibility "when comparing stories." Defense counsel asked Smelser if he had a "method" for determining who was telling the truth in a "he said/she said" situation. Smelser responded that he did not have a particular "method" but would make that determination on a "case by case" basis. Defense counsel also asked Smelser if he had observed differences in demeanor between two people who had been involved in a dispute. Smelser responded that, in that situation, the "accuser" and the person being accused would "sometimes" display similar types of demeanor, and that any difference in demeanor "varies case by case." Smelser indicated that, in this case, KC appeared to be "shaken up" and "distressed," and that defendant seemed "curious" and "concerned."

On redirect examination, the prosecutor asked Smelser, "And in fact, in response to questions asked by [defense counsel], did you come to a conclusion about whether you thought [defendant] was telling the truth?" Smelser responded, "I did." The prosecutor then asked, "And what was that conclusion?" Smelser responded, "I felt that he was not truthful." Defendant did not object to the question or move to strike the response.

A jury convicted defendant of unlawful use of a weapon, and the court sentenced him to 36 months' probation. Defendant appealed, assigning error to the trial court's failure to strike, *sua sponte*, Smelser's testimony that defendant "was not truthful." Defendant contended that the testimony was "plainly vouching" and that the trial court's failure to strike the testimony was plain error that warranted reversal.

The Court of Appeals affirmed the conviction, concluding that the trial court had not plainly erred in failing to strike Smelser's testimony. The court explained, applying its own precedents, that failing to strike vouching evidence is not plain error where the record supports a plausible inference that the defendant chose not to object for strategic reasons. *Hutchings*, 340 Or App at 210-11 (citing *State v. Wilson*, 266 Or App 481, 492, 337 P3d 990 (2014), *rev den*, 356 Or 837 (2015), and *State v. Macias*, 282 Or App 473, 481, 386 P3d 186 (2016)). The court further explained that part of defendant's trial strategy was to "cast doubt" on the police investigation, and the vouching testimony was consistent with that strategy because it suggested that Smelser had "disbelieved defendant from the start," causing the police "to conduct an inadequate investigation." *Id.* at 212.

In a footnote, the court indicated that, even if the admission of vouching testimony amounted to plain error, the court would not exercise its discretion to reverse the conviction based on that error. *Id.* at 212 n 2. The court again noted the plausible inference that defendant had a strategic reason not to object to the testimony. In addition, in considering the gravity of the error, the court stated that "'this is not the kind of expert vouching testimony that most often has prompted [the court] to reverse a criminal conviction[.]'"

*Id.* (quoting *State v. Inman*, 275 Or App 920, 932, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016)). The court explained that Smelser did not testify "as an expert in identifying untruthfulness," and the fact that he was a law-enforcement officer, standing alone, "would not necessarily have led the jury to believe that he had special insight into defendant's veracity." *Id.* In addition, in assessing whether the trial court had been given an opportunity to correct the error, the court noted that, if defendant had objected to the testimony, "the trial court could have easily cured any error by striking the testimony and instructing the jury to disregard it." *Id.*

We allowed review on defendant's petition to clarify how the possibility that defendant had a strategic reason for failing to object to vouching testimony affects the analysis on plain-error review.

## ANALYSIS

The issues on review are (1) whether the possibility that defendant may have made a strategic choice not to object to vouching testimony was properly a consideration for the court in determining whether defendant had identified a plain error, and (2) if the admission of that testimony was reviewable as a plain error, whether defendant's conviction should be reversed based on that error. We begin with the principles of preservation and plain-error review that we recently summarized in *Wiltse*.

The general rule is that, before an appellate court may address whether a trial court committed an error, "'the adversely affected party must have preserved the alleged error in the trial court[.]'" *Wiltse*, 373 Or at 10 (quoting *Ailes*, 312 Or at 380). An exception to this general rule is that an appellate court may consider unpreserved errors "if they constitute 'plain error.'" *Id.*; *see also Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (describing plain-error review as "[t]he principal exception to preservation requirements"). The Oregon Evidence Code specifically requires a "timely objection or motion to strike" improperly admitted evidence. OEC 103(1)(a). That requirement is subject to an exception for "plain errors affecting substantial rights although they were not brought to the attention of the court." OEC 103(4).

Appellate courts addressing a claimed plain error "employ a two-step analysis." *Wiltse*, 373 Or at 10. The first step is to determine "if the error constitutes a plain error." *Id.* As noted, an error is "plain" if it is (1) an error of law, (2) obvious and not reasonably in dispute, and (3) apparent on the record. *Id.* That third requirement means that the appellate court "must not need to go outside the record to identify the error or choose between competing inferences[.]" *Id.* Whether an error constitutes a plain error is a question of law, which this court reviews for errors of law. *Id.* If an error constitutes a plain error, then, at the second step of the analysis, "an appellate court determines whether to exercise its discretion to reverse based on the error." *Id.*

This court has identified a nonexclusive list of factors that may help an appellate court determine—at step two of the analysis—whether to exercise its discretion to reverse based on a plain error. Specifically, the court may consider

> "'the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error.'"

*Id.* at 11 (quoting *Ailes*, 312 Or at 382 n 6). In *Wiltse*, we indicated that additional factors "can include whether the party alleging a plain error encouraged the error or made a strategic choice not to object to it, and whether the opposing party played a role in causing the error." *Id.* (internal citations omitted).

Defendant notes that *Wiltse* listed a "strategic choice not to object" as an additional factor that the court can address at step two of the analysis. Defendant argues from that observation that whether he had made a strategic choice not to object to the admission of Smelser's testimony is only relevant in determining, at step two, whether defendant's conviction should be reversed based on the error in admitting that testimony. The state responds that the

possibility that defendant made a strategic choice not to object means that the court would have to "choose between competing inferences," which means—at step one of the analysis—that the error is not a plain error at all.

We have addressed the "strategic choice" issue in four previous plain-error cases, two involving claims of erroneous sentences, one involving errors in the prosecutor's closing argument, and one involving an erroneous jury instruction. Although those cases are informative, none of them clearly decided whether a defendant's strategic choice not to object to the admission of evidence is analyzed at step one or step two of our framework for addressing a claim of plain error. The "strategic choice" issue traces back to our decision in *State v. Gornick*, 340 Or 160, 130 P3d 780 (2006), so we will begin with that case and discuss it in some detail.

In *Gornick*, we considered "whether the Court of Appeals improperly considered, as plain error, an unpreserved claim of sentencing error[.]" *Id*. at 162. After the defendant had pleaded guilty to a charge of third-degree assault, the trial court found certain aggravating facts and imposed an upward departure sentence. *Id*. The defendant did not object or contend that he was entitled to have a jury determine whether the state had proved the aggravating facts beyond a reasonable doubt. *Id*. On appeal, the defendant argued for the first time that a jury determination of aggravating facts was required by the Sixth Amendment to the United States Constitution, as interpreted in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 425 (2000). *Id*. The Court of Appeals concluded that the defendant's claim was reviewable as plain error, exercised its discretion to address that error, and vacated the defendant's sentence. *Id*.

We allowed the state's petition for review and reversed. We explained that "a trial court does not commit legal error by finding aggravating facts if the defendant chooses not to exercise his rights under *Blakely*." *Gornick*, 340 Or at 168. Thus, the "mere fact that a judge, rather than a jury, decides the facts relevant to sentencing does not demonstrate that any error occurred[,]" because "[b]oth

courses of proceeding are constitutionally permissible." *Id.* The defendant in *Gornick* had entered a guilty plea pursuant to a plea agreement that "clearly stated that he was giving up his jury trial rights" and consented to "having the trial court impose a sentence which *the court* found appropriate[.]" *Id.* at 169 (emphasis added; internal quotation marks and brackets omitted). Those circumstances left us "with a single event, the trial court finding the aggravating facts, but multiple competing inferences that can be drawn from that event."[2] *Id.* One possible inference was that "the trial court erred by finding the aggravating facts in violation of the Sixth Amendment." *Id.* Another possible inference was that "the defendant chose, for one of many possible reasons, not to have a jury find the aggravating facts"—as his plea agreement suggested he had. *Id.* at 170. If that were the case, we explained, then "the trial court did not err." *Id.* And we noted a "third possible inference [was] that [the] defendant did not want the trial court to find the facts *but chose not to object for strategic purposes.*" *Id.* (emphasis added).

Under those circumstances, we explained, the record did "not clearly show that the trial court erred, only that it *may* have erred." *Id.* (emphasis added). Thus, we concluded that "the first requirement of the plain error analysis [was] not satisfied[,]" because "we would be forced to choose between competing inferences respecting the trial court's finding of the aggravating facts[.]" *Id.*

We also addressed how a defendant's "strategic choice" not to object to a sentence imposed by the trial court affected the appellate court's analysis on plain-error review in *State v. Fults*, 343 Or 515, 173 P3d 822 (2007). There, the trial court imposed a 36-month term of supervised probation on a charge of manufacturing a controlled substance (MCS) even though the presumptive sentence under the sentencing guidelines was 24 months' supervision. As we explained, the trial court had imposed that 36-month term of supervised probation on the MCS charge "to match the guidelines sentence" that applied "to one of [the] defendant's

---

[2] We referred to the "competing inferences" that could be drawn because, for an error to be "plain" at the first step of the plain-error analysis, the court must not need to "go outside the record to identify the error or choose between competing inferences[.]" *Gornick*, 340 Or at 166.

other convictions[.]" *Id*. at 517. The defendant's lawyer "affirmatively endorsed that choice[.]" *Id*. And, as we noted, there was "still more to the story." *Id*. at 518. Because of the defendant's criminal record, an extensive jail sentence was "a real possibility." *Id*. At sentencing, the defendant's lawyer urged the court to impose "as little jail time as possible" so that the defendant could begin pursuing vocational rehabilitation. *Id*. On appeal, the defendant contended for the first time that the 36-month term of probation on the MCS charge was erroneous and argued for reversal as plain error. *Id*. The Court of Appeals agreed and vacated the sentence.

The state sought review in this court, arguing that the defendant's "express acceptance" of the sentence precluded appellate review, that the error was not "apparent on the face of the record," and that the Court of Appeals' reason for exercising its discretion to reverse based on the unpreserved error "was an inappropriate one." *Id*. at 519 (internal quotation marks omitted). The state urged this court to "start with its last objection" regarding the Court of Appeals' exercise of discretion. *Id*. We agreed to do so, because we believed that the Court of Appeals' decision indicated that that court may have "misapprehend[ed] its role in cases in which it is asked to exercise its discretion under ORAP 5.45(1) to consider unpreserved error." *Id*.

Ultimately, we reversed the Court of Appeals' decision in *Fults* and remanded the case for further proceedings. We explained that "a *Gornick*-style inquiry into whether the fact that defendant may have had a strategic reason not to object means that there was no error at all would be less helpful *** than simply proceeding directly" to reviewing the Court of Appeals' consideration of what it believed to have been a "plain" error. *Id*. at 520. We thus assumed—for purposes of that case—that there was a plain error and turned to reviewing the Court of Appeals' "decision to consider the alleged error." *Id*. In that context, we explained that "the Court of Appeals should take into consideration any strategic purpose that [the] defendant may have had in not objecting to the trial court's course of action." *Id*. We concluded that the Court of Appeals' decision to consider the defendant's unpreserved claim of error was an abuse of discretion

because the court offered only one reason for doing so: The state had "no valid interest in requiring [the] defendant to serve an unlawful sentence." *Id.* at 523 (emphasis omitted). We explained that "other factors also must be considered and may outweigh that one." *Id.* Among those "other factors" was "the possibility that [the] defendant made a strategic choice not to object to the sentence[.]" *Id.*

More recently, we addressed the "strategic choice" issue in a different context in *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022). The issue in *Chitwood* was whether two "highly improper" statements made by the prosecutor during the rebuttal closing argument constituted plain error, and if so, whether they were so egregious that they deprived the defendant of a fair trial. We concluded that the prosecutor's statements constituted plain error without addressing at step one in the analysis whether the defendant may have had strategic reasons for not objecting to those statements at trial. At step two of the analysis, the state argued that the error did not warrant reversal, because "there was 'a possibility that [the] defendant made a strategic choice' not to request a mistrial or a curative instruction[,]" which would make it "unfair to the state" for the court to exercise its discretion to reverse based on that error. *Id.* at 322-23. We rejected that argument, noting "the prosecutor's role" in creating the defendant's "predicament" and the fact that "the record [did] not show that defendant encouraged or invited the prosecutor's conduct[.]" *Id.* at 326. The dissenting opinion noted that our "cases have left unresolved the question whether a party's strategic choice not to object is relevant to the *existence* of plain error, or relevant only to the discretionary choice to correct such an error, or both." *Id.* at 334 n 2 (Garrett, J., dissenting) (emphasis in original).

Finally, we addressed the "strategic choice" issue again in a different context in *Wiltse*, 373 Or 1. The defendant in *Wiltse* argued for the first time on appeal that the trial court had plainly erred in giving a jury instruction that amounted to a comment on the evidence. The Court of Appeals agreed with the defendant that the instruction was a comment on the evidence that was prohibited by ORCP 59 E, but it held that giving the instruction was not plain error,

because "it was possible that [the] defendant had agreed to the instruction or had made a strategic choice not to object to it and, therefore, the alleged error *** did not appear on the record." *Id.* at 3-4. We reversed. We explained that the premise of the Court of Appeals' decision was that "it is not error for a trial court to give an instruction that comments on the evidence if the parties agree to the instruction or make a strategic choice not to object to it." *Id.* at 4. But, we concluded, "that premise is incorrect." *Id.*

We explained that, under our case law, whether a jury instruction "violates the rules that govern jury instructions *** is a question of law that can be determined by examining the instruction itself[.]" *Id.* at 9-10. If the instruction violates those rules, then "giving it was error and the error [was] apparent on the record." *Id.* at 10. We further explained that ORCP 59 E's "prohibition against comments on the evidence protects the jury's role as the factfinder, and parties cannot agree to allow a trial court to interfere with that role." *Id.* at 18. If a trial court gives an instruction that violates ORCP 59 E, "the trial court has erred and the error is apparent on the record." *Id.* "Whether the parties agreed to the instruction or made [a] strategic choice not to object to it does not alter the fact that, by giving the instruction, the trial court violated its independent duty under ORCP 59 E." *Id.* But, we explained, those possibilities "*can* affect whether an appellate court exercises its discretion to remedy an error." *Id.* (emphasis in original).

In summary, we have addressed the "strategic choice" issue in two sentencing cases (*Gornick* and *Fults*); one closing argument case (*Chitwood*); and one jury instruction case (*Wiltse*). In *Gornick*, we considered whether the defendant had made a strategic choice not to object to the sentence at step one of the analysis in determining whether the error was plain. In *Fults*, we assumed that the sentencing error was plain and considered—at step two of the analysis— whether the defendant had made a strategic choice not to object to the sentence. In *Chitwood*, we addressed the strategic choice issue at step two of the analysis without deciding whether the issue was relevant in determining the existence of plain error at step one. And in *Wiltse*, we determined that

whether the defendant had made a strategic choice not to object to a jury instruction was a factor to be considered at step two of the analysis in determining whether a conviction should be reversed based on that plain error.

None of those cases resolved the issue presented here, which involves the admission of vouching evidence without objection, but the analysis we applied in those other contexts is informative. In the context of a sentencing error, *Gornick* indicated that a strategic choice not to object is part of the analysis, at step one, if one of the permissible inferences that can be made from that choice is that "the trial court did not err." 340 Or at 170. *Wiltse* applied that principle in the context of an instructional error, concluding that the error was "plain," because a defendant's strategic choice not to object would not "alter the fact that, by giving the instruction, the trial court violated its independent duty" to avoid commenting on the evidence. 373 Or at 18.

Under OEC 103(1)(a), a trial court ruling admitting evidence generally is not considered an error on appeal absent a timely objection or motion to strike. It follows that trial courts ordinarily do not have any independent duty to exclude inadmissible evidence, but only a duty to correctly rule on a timely objection or motion to strike. That could render such circumstances less like *Wiltse*—where the court's duty to act was independent of any decision by the parties— and more like *Gornick*, where a party's decision could mean that the court had not erred at all. But the rule against vouching is not based on OEC 103. The "vouching rule" is a judicially created evidentiary rule that is not codified in the Oregon Evidence Code. *State v. Chandler*, 360 Or 323, 331, 380 P3d 932 (2016). As a result, "the exact contours of the rule may be difficult to trace." *Id*.

In general, impermissible vouching occurs when a witness makes "[a] direct comment on the credibility of a witness or a statement that is 'tantamount' to stating that another witness" is truthful or untruthful. *State v. Beauvais*, 357 Or 524, 543, 354 P3d 680 (2015).[3] Such testi-

---

[3] *Beauvais* addressed testimony that a witness had been truthful, but, as we have noted, the rule against vouching applies "both to comments that bolster and to comments that undermine a witness's credibility." *Chandler*, 360 Or at 331 n 3.

mony is excluded to ensure that "'the jury's role in assessing witness credibility is not usurped by another witness's opinion testimony.'" *State v. Black*, 364 Or 579, 585, 437 P3d 1121 (2019) (quoting *Chandler*, 360 Or at 330); *see also State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983) ("We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth."). In that sense, a trial court's obligation to address vouching evidence is similar to the court's independent obligation to correctly instruct the jury on the law that we addressed in *Wiltse*.

We have indicated, without expressly holding, that trial courts may have an obligation to intervene *sua sponte* with respect to evidence that violates the rule against vouching. *See State v. Sperou*, 365 Or 121, 140, 442 P3d 581 (2019) (holding that the trial court's error in denying a defendant's pretrial motion to exclude vouching testimony was not a harmless error, and noting that, "[i]n general, witness vouching in Oregon is considered prejudicial, so much so in fact that it sometimes requires intervention by the trial court even when parties fail to object to it"); *State v. Milbradt*, 305 Or 621, 630, 756 P2d 620 (1988) (suggesting that, if a question seeks to elicit vouching testimony, "the trial judge, *sua sponte*, should summarily cut off the inquiry before a jury is contaminated by it").

Defendant contends that the testimony at issue violates the "categorical prohibition" against vouching evidence that we have previously recognized, and, therefore, that this case is more like *Wiltse*, because any strategic decision by defendant was immaterial to whether the trial court plainly erred. The state contends in this court that the testimony here does not violate that categorical prohibition, because it could have been offered for a purpose other than the truth of the credibility opinion that it expresses;[4] the state further contends that, even if the testimony was impermissible vouching evidence, it was not an abuse of discretion to decline to reverse defendant's conviction based on its erroneous admission.

We need not address the state's first argument because we agree with its second. Assuming without

_____

[4] The state did not make that argument in the Court of Appeals.

deciding that the testimony was impermissible vouching, we conclude that the error affects, at step two of the analysis, whether an appellate court should, in its discretion, reverse defendant's conviction on plain-error review. And, as we will explain, we conclude in this case that the Court of Appeals did not abuse its discretion in declining to reverse defendant's conviction.

If the testimony was categorically prohibited as vouching, whether the trial court *erred at all* in receiving it would not depend on whether defendant might have had a strategic reason for not objecting to the testimony. In that regard, impermissible vouching evidence is more like the instructional error in *Wiltse* than the sentencing error in *Gornick*. Even if the record revealed that defendant chose, for strategic reasons, not to object to vouching testimony, if the testimony is categorically prohibited as vouching, it would still be error to allow it, though the error might not be grounds for reversal.[5] We conclude in this context that the possibility that defendant did not object to vouching evidence for strategic reasons is immaterial to the appellate court's inquiry at step one of the analysis. In other words, if there was an error in admitting testimony that is categorically prohibited as vouching, the error was plain regardless of whether defendant chose, for strategic reasons, not to object to that testimony.

The only remaining issue is whether defendant's conviction should be reversed based on that plain error. As noted, that is a discretionary decision that involves consideration of the factors listed in *Ailes* and other relevant factors, including the possibility that defendant may not have objected to the evidence for strategic reasons. *Wiltse*, 373

---

[5] For example, if the trial court had excused the jury after the prosecutor's question, inquired about defendant's failure to object, and defense counsel had responded on the record that the defense chose not to object, because the testimony was consistent with defendant's theory of the case and defendant wanted the jury to hear it, then we would have a clear record that defendant's failure to object was for strategic reasons. Because the prohibition on vouching evidence is categorical where the evidence is offered for the truth of the opinion testimony, a defendant's choice not to object to vouching testimony offered for its truth would not make the testimony admissible, but it might very well preclude reversal on appeal. *See State v. Serrano*, 355 Or 172, 188, 324 P3d 1274 (2014) (stating that this court "has consistently declined to review plain error" that had been "encouraged" by the party seeking review).

Or at 11 (quoting factors listed in *Ailes*, 312 Or at 382 n 6). Defendant contends that this court should undertake that discretionary analysis. We decline to do so.

In *State v. Vanornum*, 354 Or 614, 631, 317 P3d 889 (2013), we indicated that this court "could undertake" the "discretionary assessment" of whether a plain error warrants reversal, but we declined to do so in that case. In general, discretion is the authority "to choose among several legally correct outcomes." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). A decision that is "within the range of legally correct discretionary choices and produced a permissible, legally correct outcome," is not an abuse of discretion. *Id*.

In *Vanornum*, we observed that "[t]he nature of discretion is that it is best exercised by the entity principally charged with its exercise." 354 Or at 631. Thus, we concluded on plain-error review that the Court of Appeals is better situated to make that discretionary determination in the first instance, because it "is the error-correcting tribunal to which claims of error and plain error may be presented as a matter of right." *Id*. We adhere to that approach in this case and decline to undertake that discretionary assessment in the first instance.

Defendant further contends that, if we do not undertake that assessment, then we should remand to the Court of Appeals so that it could determine whether to exercise its discretion to reverse defendant's conviction.[6] We decline to do that because the Court of Appeals has already stated how it would exercise its discretion and why. *Hutchings*, 340 Or App at 212 n 2.[7] We decline to remand to the Court of

---

[6] Defendant contends that that the Court of Appeals "never exercised discretion," because it concluded that there was not plain error, and that, to the extent that the Court of Appeals explained in a footnote that it would not exercise discretion to reverse even if the error was plain, the court had "balanced the parties' contribution to the error incorrectly."

[7] In stating that it would decline to exercise its discretion to reverse defendant's conviction, the Court of Appeals expressly addressed two factors listed in *Ailes*—the "nature of the case" and the "gravity of the error." *Hutchings*, 340 Or App at 212 n 2. The court also noted that the record "supports a plausible inference" that defendant had a strategic reason not to object to the testimony. *Id*. Although that factor was not listed in *Ailes*, we concluded in *Wiltse* that "whether the party alleging a plain error encouraged the error or made a strategic choice

Appeals so that it can repeat that statement. Instead, we review the Court of Appeals' decision for an abuse of discretion. *See Gornick*, 340 Or at 167 ("[T]his court inquires whether the Court of Appeals abused its discretion in deciding to consider the error under the second step in the plain error analysis.").

The Court of Appeals did not abuse its discretion here. It stated that it must exercise the "utmost caution" in deciding whether to reverse defendant's conviction on plain-error review. *Id.* We have explained that the decision to reverse based on a plain error must be made "with the 'utmost caution' because such review undercuts the policies served by the preservation doctrine." *Vanornum*, 354 Or at 630-31 (quoting *Ailes*, 312 Or at 382). As a result, "it is only in 'rare and exceptional cases' that an appellate court should reverse based on an error that had not been raised in the trial court." *State v. Ortiz*, 372 Or 658, 666, 554 P3d 796 (2024) (quoting *Gornick*, 340 Or at 166, and *Hotelling v. Walker*, 174 Or 381, 385-86, 148 P2d 933 (1944)).

The Court of Appeals, exercising the appropriate "utmost caution," did not see this as one of the "rare and exceptional cases" that justifies reversing a conviction based on an error that had not been raised in the trial court. That was within the range of legally correct choices available to that court, and it produced a permissible, legally correct outcome. The court did not abuse its discretion in reaching that conclusion.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

not to object to it" can be an "additional factor" that the court may consider at step two of the analysis. *Wiltse*, 373 Or at 11. Finally, the court pointed out in assessing another factor listed in *Ailes*—whether the trial court had been given an opportunity to correct the error—that, if defendant had objected to that testimony, the trial court likely would have sustained the objection, stricken the testimony, and instructed the jury to disregard it. *Hutchings*, 340 Or App at 212 n 2.